98 N.J. Super. 85 (1967)
236 A.2d 164
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ABRAHAM KABAYAMA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 9, 1967.
Decided November 28, 1967.
*86 Before Judges KILKENNY, CARTON and MATTHEWS.
Mr. Lewis Stein argued the cause for appellant.
Mr. Donald R. Del Monte, Assistant Prosecutor, argued the cause for respondent (Mr. Frank D. Scerbo, Morris County Prosecutor, attorney).
Mrs. Virginia Long Annich, Deputy Attorney General, argued the cause on behalf of the State of New Jersey appearing as amicus curiae (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by CARTON, J.A.D.
Defendant was found guilty in the municipal court of failing to have a motor vehicle registration certificate in his possession N.J.S.A. 39:3-29. On appeal to the County Court on a de novo trial, on an agreed statement of facts, defendant was again found guilty and fined $3 and costs. Defendant appeals from the County *87 Court judgment. The facts, as stipulated, are set forth in the opinion of the trial court reported at 94 N.J. Super. 78 (Cty. Ct. 1967).
Defendant argues on this appeal that the practice of establishing roadblocks by the police for license and motor vehicle registration checks constitutes an illegal invasion of the motorist's right of privacy, contrary to the provisions of the Fourth Amendment of the United States Constitution and Art. I, par. 7 of the Constitution of New Jersey. The licensing and registration provision of the Motor Vehicles Act can be adequately policed, defendant maintains, through the procedures prescribed by the State Inspection Law, N.J.S. 39:8-1 et seq. and other provisions of the Motor Vehicles Law. On this theory he reasons that only when there exists probable cause for arrest or reasonable grounds for investigation may police demand that the motorist exhibit his license credentials and vehicle registration.
It is now generally recognized that there is a common need by all mankind to be left alone. Nearly all societies have characteristically granted every man a reservoir of utter security. Referring to the importance which the makers of the United States Constitution attached to this right, Mr. Justice Brandeis, dissenting, in Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944, 956 (1928), said:
"They conferred, as against the government, the right to be left alone  the most comprehensive of rights and the right most valued by civilized men. To protect that right, every unjustifiable intrusion by the government upon the privacy of the individual, whatever the means employed, must be deemed a violation of the Fourth Amendment." (Emphasis added)
Not every intrusion by government on the privacy of the individual is protected by the Fourth Amendment. The individual's basic claim to be alone is not an absolute one. It is recognized that certain intrusions on the privacy of the individual may be justified in the public interest.
*88 The individual's right of freedom of movement is one aspect of his more general right of privacy. That right of movement does not and, in the nature of things, cannot confer upon the motorist, as defendant seems to contend, the right of "untrammeled movement" on a public highway. Considering the highly mobile nature of our society, such a right cannot be unlimited. In the common welfare, the State has an interest in regulating the use of its highways by requiring that vehicles traveling upon them be properly registered and that persons operating such vehicles be qualified to operate them safely. The temporary stoppage of vehicles upon the highways, either singly or as a part of a check by means of a roadblock procedure, for the purpose of ascertaining whether those requirements are being complied with represents a valid exercise of the State's police power in the furtherance of the State's legitimate interest.
We cannot ignore the reality that millions of motorists daily use our highways. The State argues forcibly that such random road checks are the most effective means yet devised of enforcing the registration and licensing requirement of the statute, and that no other practical method has been suggested for apprehending drivers without licenses or unfit drivers whose licenses have been suspended or revoked because of prior offenses.
Balancing the interest of the State in regulating such use against the minor inconvenience which may be caused to the motorist and the fleeting and minimal intrusion on his privacy, it cannot be said that the State's action represents an unreasonable infringement upon or erosion of his right of privacy. It is an accommodation of the right of the citizen to freedom of movement to the needs of society. It poses no serious threat of destroying man's ultimate right to be alone. This appears to be the generally accepted view throughout the country. See Myricks v. United States, 370 F.2d 901 (5 Cir. 1967); Lipton v. United States, 348 F.2d 591 (9 Cir. 1965); Mincy v. District of Columbia, 218 *89 A.2d 507 (D.C. Ct. App. 1966); City of Miami v. Aronovitz, 114 So.2d 784 (Fla. Sup. Ct. 1959); Commonwealth v. Mitchell, 355 S.W.2d 686 (Ky. Ct. App. 1962).
Affirmed.