479 P.2d 432

The STATE of Arizona ex rel. Moise BERGER, Maricopa County Attorney, Petitioner,

v.

The Honorable Irwin CANTOR, Judge of the Superior Court of Maricopa County, and Carlos Carrizoza, and Ernesto Carrizoza, real parties in interest, Respondents.

No. I CA–CIV 1450.

Court of Appeals of Arizona, Division 1, Department A.

Dec. 28, 1970.

Rehearing Denied Jan. 21, 1971.

Review Denied Feb. 23, 1971.

Moise Berger, Maricopa County Atty. by William F. Bennett, Deputy County Atty., Phoenix, for petitioner.

Estrada & Estrada by Lionel C. Estrada, Phoenix, for respondents.

CAMERON, Judge.

This is a petition for a special action to review an order of the respondent Superior Court Judge suppressing evidence in a criminal trial for possession of mari-

juana. The order was entered after a hearing held before trial.

After informal hearing before this Court, the matter was taken under advisement and the record of the Superior Court ordered transmitted to this Court. It was also ordered that additional briefs be filed on the questions raised in the petition.

In determining whether or not the trial court was correct in suppressing the evidence, we must answer two questions:

1. Whether the officer had the right to stop the motor vehicle, and

2. having stopped the motor vehicle did he have a right to seize the evidence upon which the complaint was founded.

The facts necessary for a determination of the matter on appeal are substantially as follows. On 3 April 1970, at approximately 7:15 a. m., a highway patrolman observed a 1959 Ford stationwagon bearing California plates and occupied by what appeared to be two juveniles going west on U.S. 80 near Wickenburg, Arizona. According to the testimony of the patrolman, the vehicle did not appear to be in a satisfactory condition and the patrolman therefore stopped the vehicle in order to conduct a driver's license, registration, and safety equipment inspection. The defendant, Carlos A. Carrizoza, was the driver of the vehicle. He stepped outside the automobile and upon request he showed the officer his driver's license. When asked for his automobile registration the defendant returned to the vehicle, got into the driver's seat, and reached across to the glove compartment of the automobile. Upon opening the door of the glove compartment, Officer Hale observed a brick-like cellophane covered object that appeared to be a kilo of marijuana. Immediately the defendant slapped the door of the glove compartment shut. The officer was standing behind the defendant staring into the glove compartment when he observed the object. The officer had just received training in narcotics identification and had reason to believe that the object was marijuana.

The officer advised both defendants to get out of the vehicle, and after frisking them placed them under arrest for possession of marijuana. After advising the defendants of their Miranda rights in Spanish as well as English, the officer advised the driver that he had probable cause to believe the object in the glove compartment was marijuana and wanted to look at it. The defendant did not object and the officer examined the object, placed it back in the glove compartment, and closed the door.

The vehicle was taken to the Wickenburg Police Department where the officer removed the object from the glove compartment. The object was determined to be marijuana. Based upon this information another officer, a narcotic's officer with the Department of Public Safety, obtained a search warrant for the vehicle and a search of the vehicle produced 99 kilos of marijuana.

In the Superior Court, defendants filed a motion to suppress the evidence. After a hearing, at which time testimony was taken, the court issued an order suppressing the evidence, stating in part as follows:

"1. Assuming the officer had the right to stop the vehicle and ask its driver for his motor vehicle license and automobile registration, the officer did not, as a finding of fact, have probable cause to search the glove compartment of the automobile because he had seen a cellophane wrapped package inside the glove compartment when one of the Defendants opened the glove compartment.

"2. The officer did not, as a finding of fact, have probable cause to search the glove compartment because one of the Defendants hurriedly closed the compartment after opening it.

"3. The officer did not, as a finding of fact, have probable cause to search said automobile because of any alleged furtive gestures by the Defendants or any one of them.

"4. The Defendants, nor either of them, as a finding of fact, did not voluntarily

consent to the search of the automobile in question nor its glove compartment. "5. As a finding of fact, the search of the automobile and the glove compartment by the officers was not incident to a lawful arrest."

### WAS THE STOP LAWFUL?

■ The trial court assumed that the stopping of the vehicle was lawful and concerned itself only with the search after the detention of the automobile. We feel that we must first cross the hurdle of the reasonableness of the stopping of the automobile. The officer testified:

"I observed westbound a 1959 Ford stationwagon bearing California plates. The vehicle was occupied by what appeared to be two juveniles. It turned out they were adults. The subjects in the vehicle, one was in the back seat, and one was driving. The one of them in the back appeared to be—he was doing something with his hands for a couple of miles. I was curious as to what he was doing, whether he was trying to hide something, or if he was simply reading a book, or something like that. The vehicle did not appear to be in a satisfactory condition. I stopped the vehicle at Milepost 121 in Morristown to conduct a driver's license, registration, and safety equipment inspection."

On cross-examination he testified that with the exception of one bald tire on the right rear there was no other specific safety problem with the automobile. He further testified:

"Q So then your assumption that the car was not well kept was based on the fact that it was dirty, Officer?

"A Dirty, unwaxed, et cetera.

"Q Do you stop every dirty unwaxed car you see for vehicle inspection, Officer, if you can?

"A Yes, sir, if I'm not busy doing something else.

"Q And in your estimation is a dirty unwaxed car enough excuse for stopping a vehicle?

"A If it is 10 or 11 years old."

The United States Court of Appeals, 9th Circuit, has upheld a temporary stop of a motor vehicle for the purposes of checking for a driver's license. The court stated as follows:

"On June 18, 1964, Bakersfield, California, motorcycle police patrol officer Snow while on traffic control duty observed appellant, a youth 18 or 19 years old, driving on a city street in Bakersfield a 1951 Chevrolet automobile with Arizona state license plates. Snow was a traffic control motorcycle patrolman whose main duty pertained to traffic control work. Pursuant to his assigned duty and utilizing the red light on his motorcycle, officer Snow stopped the Chevrolet driven by appellant to see if the driver had a driver's license.

*   *   *   *   *   *

"Since appellant's car was subject to the licensing provisions of the California Vehicle Code, it was lawful for the officer to stop the car to investigate the driver's possession of a license to drive the car on the California highway in question. No other way was available to the officer to determine whether appellant possessed the required license. The momentary detention of appellant for this limited purpose was not an arrest of appellant. * * * If stopping appellant for the sole purpose of inquiring whether he held a license for the activity in which he was engaged was in any sense a 'seizure' it was not an 'unreasonable' one, and did not violate any right given appellant by the Fourth Amendment, made applicable to the State by the Fourteenth. * * *

A contrary holding would render unenforceable the State statute requiring that automobile drivers be licensed." Lipton v. United States, 348 F.2d 591, 592, 593 (1965). But see People v. Franklin, 261 Cal.App.2d 703, 68 Cal.Rptr. 231 (1968).

And:

> "* * * While it is clear that at the time appellee's car was pulled over probable cause for an arrest did not exist, it is also clear that not every time an officer sounds his siren or flashes a light to flag down a vehicle has an arrest been made. The initial act of stopping appellee's car was not an arrest. * * *." Wilson v. Porter, 361 F.2d 412, 414, 415 (9 Cir. 1966).

We believe that under the circumstances in this case, the officer had the right to stop the automobile. Considering the highly mobile nature of our society, and the valid interest of the State in seeing that the highways remain safe for the use of all of its citizens, we believe that this was a valid exercise of the State's police power in furtherance of the State's legitimate interest. Concerning a roadblock situation rather than a selective stopping of a motor vehicle, the New Jersey Superior Court has stated the problem as follows:

> "* * * In the common welfare, the State has an interest in regulating the use of its highways by requiring that vehicles traveling upon them be properly registered and that persons operating such vehicles be qualified to operate them safely.
>
> * * * * * *
>
> "Balancing the interest of the State in regulating such use against the minor inconvenience which may be caused to the motorist and the fleeting and minimal intrusion on his privacy, it cannot be said that the State's action represents an unreasonable infringement upon or erosion of his right of privacy. It is an accommodation of the right of the citizen to freedom of movement to the needs of society. It poses no serious threat of destroying man's ultimate right to be alone." State v. Kabayama, 98 N.J. Super. 85, 236 A.2d 164, 166 (1967).

## WAS THE SEARCH REASONABLE?

■ At the hearing on the motion to suppress the officer testified:

> "THE WITNESS: Carlos pressed the glove box door, but the glove box door fell open, and I saw a brick like cellophane covered object that appeared to me to be a kilo of marijuana. Just the instant he pressed the button the door fell open, and he slapped it shut.
>
> "Q (By Mr. STITCH) Where were you standing at this time?
>
> "A I was standing, based on my experience, right behind the driver staring into the glove box, but I didn't know whether he had weapons in it.
>
> "Q All right now, what did you do then?
>
> "A I immediately advised the driver and the occupant in the rear to get out of the vehicle, and put their hands on their hood, and that I wanted to search them.
>
> "Q Did you?
>
> "A I frisked them, advised them to return to my patrol car, where they were placed under arrest for possession of marijuana. I handcuffed them and then advised them of their rights."

The officer testified that he advised them of their rights in both English and Spanish and that they said they understood. He then radioed his supervisor:

> "Q All right, after you radioed in for assistance, did you at that time say anything to either one of these men?
>
> "A I advised Carlos, the driver, that I had probable cause to believe that the object in the glove box was a kilo of marijuana. I advised that if it was not a kilo of marijuana, and my words were, instead of perhaps a Christmas present, and if he wanted me to look at it, I would do so. Carlos advised me that he didn't care if I looked at the object in the glove box. I proceeded to the glove box and examined the object."

Our Court and the Supreme Court of Arizona have both held that where a vehicle is stopped for a reasonable or legitimate reason, the officer does not have to refuse to look at what is in plain view. In the instant case, the defendant was reaching in the glove compartment for his registration

and a brick of what the officer had probable cause to believe was marijuana was exposed to the eyes of the officer. We agree with the petitioner that what is discovered without a search cannot be the subject of an unreasonable search. See State v. Perez, 7 Ariz.App. 567, 442 P.2d 125 (1968); State v. Taylor, 3 Ariz.App. 157, 412 P.2d 726 (1966).

"Evidence discovered and seized when in plain view in a car, defendant being stopped for traffic violations is not an unreasonable search. State v. Perez, 7 Ariz.App. 567, 442 P.2d 125 (1968)." State v. Navallez, 10 Ariz.App. 135, 137, 457 P.2d 297, 299 (1969).

The order of the trial court granting the motion to suppress is set aside and the matter returned to the trial court for further proceedings consistent with this opinion.

DONOFRIO, P. J., and STEVENS, J., concur.