504 P.2d 548

The STATE of Arizona, Appellee,

v.

Mark Adam TARAS, Appellant.

No. 2 CA–CR 305.

Court of Appeals of Arizona, Division 2.

Dec. 19, 1972.

Rehearing Denied Jan. 17, 1973.

Review Denied Feb. 27, 1973.

Gary K. Nelson, Atty. Gen., Phoenix, by John S. O'Dowd, Asst. Atty. Gen., Tucson, for appellee.

Ed Bolding, Pima County Public Defender, by Richard Van Duizend, Asst. Public Defender, Tucson, for appellant.

KRUCKER, Chief Judge.

Defendant was charged in an information with illegal transportation of marijuana and possession of marijuana for sale. A motion to suppress the marijuana on the grounds that seizure of the marijuana was the result of an unlawful search was subsequently made and denied after the illegal transportation count was dropped. Upon defendant's waiving his right to trial by jury, the case was submitted to the court on the testimony contained in the preliminary hearing transcript and some additional evidence offered on defendant's behalf. From a conviction of possession of marijuana for sale, this appeal followed.

Defendant raises the following questions on appeal:

(1) Were the facts sufficient to constitute probable cause to arrest defendant?

(2) Is the entry into the glove compartment, and subsequent entry into the locked trunk by the police officer in an effort to find an indication of ownership an unreasonable search?

The facts necessary for a determination of this matter are as follows. On October 28, 1970, defendant was in a 1965 Buick automobile parked facing south in an unposted desert area behind the Midway Drive-In theatre in Tucson, Arizona. The screen was directly in back of the vehicle. At about 11:15 p. m., a patrol car with two police officers, Carstensen and Shoemaker, entered the area behind the drive-in looking for abandoned cars that had been stolen. One officer testified at the preliminary hearing that they often found stolen or abandoned vehicles in the desert area.

Defendant was behind the wheel of the car as the patrol vehicle approached at a

speed of ten to fifteen miles per hour. Upon seeing the bright lights of the patrol car, the defendant straightened up, turned around to look back at the patrol car, and drove off rapidly into the desert without turning on his headlights. The police immediately turned on the patrol car's emergency equipment and pursued the defendant at a close distance. After traveling only sixty or seventy yards, defendant's car skidded sharply, whereupon he abandoned the vehicle in motion and took off across the desert on foot with Officer Carstensen in pursuit. Carstensen identified himself and shouted to the defendant while he was chasing him, "Stop, this is the police." The defendant, however, stopped only after tripping over a cactus and running into a barbed wire fence about twenty yards from the car. After being apprehended by Carstensen, he was then led back to his own car where he was frisked and checked for identification. After the defendant furnished Carstensen with his valid Arizona driver's license, he was handcuffed and led back to the patrol car. He was advised of his rights, placed in the back seat of the car and secured by a seat belt. Officer Carstensen then checked via police radio to see if the car had been reported stolen and received a reply that it had not.

After being advised of his rights, defendant told Officer Shoemaker that he wanted to contact his attorney, that the car belonged to him and that there was no registration card in the car. Shoemaker relayed this information to Carstensen, who then searched the vehicle for evidence of registration. Officer Carstensen got into the vehicle and looked at the seat and the dashboard and visor area. He found no registration but observed some matchbooks and some small paper that is normally used for rolling cigarettes strewn on the front seat and on the floorboard. In continuing his search for the ownership registration papers, he opened the glove compartment and noticed two baggies of what appeared to be marijuana. He told Officer Shoemaker of his discovery and asked him to call their sergeant. Carstensen then continued to search for a registration paper inside the car and glove compartment. He then took the keys from the ignition and opened the trunk, still looking for the registration paper. He found a large brown sack containing 42 separate plastic baggies full of a green, leafy susbtance, later found to be marijuana, in the trunk.

## RIGHT TO STOP

Defendant has presented the first issue in terms of probable cause to arrest. We find it unnecessary, however, to discuss the validity of the police activity from such standpoint. Not every time an officer flashes his emergency equipment to flag down a vehicle has an arrest been made. Wilson v. Porter, 361 F.2d 412 (9th Cir. 1966); State v. Cloman, 254 Or. 1, 456 P.2d 67 (1969); State v. Fish, 280 Minn. 163, 159 N.W.2d 786 (1968); People v. King, 270 Cal.App.2d 817, 76 Cal.Rptr. 145 (1969). When an officer is engaged in an investigation, he may detain a person under circumstances not justifying an arrest. State ex rel. Berger v. Cantor, 13 Ariz.App. 555, 479 P.2d 432 (1971); State v. Baltier, 17 Ariz.App. 441, 498 P.2d 515 (1972). Thus, we find it necessary to consider whether, under the circumstances, the detention or seizure of the defendant for investigatory purposes was justified and whether it was reasonable in the manner in which it was carried out.

Discussing when a reasonable detention is justified, the court, in Wilson v. Porter, supra, stated:

". . . due regard for the practical necessities of effective law enforcement requires that the validity of brief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could have had reasonable grounds for their action. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing." 361 F. 2d at 415.

■ In State v. Baltier, supra, our court recently dealt with what is necessary to justify a forced stop for investigative purposes. In adopting the California test set forth in Irwin v. Superior Court, 1 Cal.3d 423, 82 Cal.Rptr. 484, 462 P.2d 12 (1969), we said:

"There must be a rational suspicion by the police officer that some activity out of the ordinary is or has taken place, some indication to connect the person under suspicion with the unusual activity, and some suggestion that the activity is related to crime. [Citation omitted]" 498 P.2d at 522

We believe that the above test should apply not only to a situation such as in *Baltier*, but also to force stops of vehicles.[1]

■ In light of the above, we believe the officers were justified under the circumstances in detaining the defendant to ascertain ownership of the car. Nor do we think the detention unreasonable because the defendant was handcuffed and seatbelted into the back seat of the patrol car. A valid limited detention is, in effect, a forced stop. Terry v. Ohio, Justice Harlan, concurring opinion, 392 U.S. 1, 32–33, 88 S.Ct. 1868, 1888, 20 L.Ed.2d 889, 912 (1968). The force applied to the detention must be that which is reasonable *under the circumstances*. In considering whether the frisk of the person was justified in Terry v. Ohio, supra, Mr. Chief Justice Warren observed "the specific content and incidents of this right must be shaped by the context in which it is asserted." We think this right to stop and the method employed in stopping an individual must also be shaped by the context in which it is asserted. Applying this principle to the case at bar, we are of the opinion that handcuffing and seatbelting defendant into the patrol vehicle was reasonable under the circumstances. The defendant had sought to avoid the police even to the extent of abandoning the car while it was in motion. Disregarding the command of Officer Carstensen to stop, he continued to run until he ran into a fence. It was not unreasonable to assume that while he was in their custody, given an opportunity he would attempt to flee.

## RIGHT TO SEARCH

The defendant has argued that even if the detention was justified, the search for the car registration was not warranted, being neither justified as a search incident to an arrest, e. g., Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L. Ed.2d 777 (1964), nor within the "moving car" emergency circumstances doctrine enunciated in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and recently reiterated in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 2d 419 (1970). We believe that the circumstances presented fall within the Carroll-Chambers doctrine and justified a search for ownership registration papers.

It was quite apparent that defendant wished to avoid the police. While it is true that he supplied to the officers a valid driver's license with his picture on it and that the car was not on the hot sheet, we do not believe this should deter law enforcement agencies from their duty to protect the safety of highways. People v. Grubb, 63 Cal.2d 614, 47 Cal.Rptr. 772, 408 P.2d 100 (1965).

Although the defendant told the officers that the registration was not in the car, they did not have to believe him. His previous conduct would certainly cast doubt upon his veracity. *See*, State v. Boykins, 50 N.J. 73, 232 A.2d 141 (1967).

As stated in People v. Vermouth, 20 Cal.App.3d 746, 751, 98 Cal.Rptr. 65, 70 (1971):

"As a police officer in the field Lee was not the ultimate trier of fact. His

1. We are not unmindful of State ex rel. Berger v. Cantor, supra, decided by Division I, which ostensibly gives the police an absolute right to stop a vehicle solely to conduct a license, registration and safety inspection. We believe that case is distinguishable from the one at bar, however, in that the purpose in detaining the defendant in the instant case was to determine if the car was stolen.

duty in the situation which confronted him was to act upon observed objective facts. If such facts made a certain course of police conduct reasonable, Lee was not required to abandon that course of conduct because of the statements of an interested person, possibly involved in the commission of serious crime."

 After receiving this information, Officer Carstensen, suspecting the car was stolen, checked for registration papers on the dashboard, sun visor and steering column, pursuant to A.R.S. § 28–305, subsec. D, as amended. The ownership registration not being in any of these places, nor anywhere in plain sight, defendant was in violation of A.R.S. § 28–305, subsec. D, as amended. Concededly not every traffic violation will justify a search of every part of the vehicle, *see*, Annot., 10 A.L.R.3d 314 (1966), but a violation will justify a search for things related to it in places where it may reasonably be found. Draper v. State, 265 F.Supp. 718 (D.Md.1967); People v. Prochnau, 251 Cal.App.2d 22, 59 Cal.Rptr. 265 (1967). We think such a place is the glove compartment. *See*, Kendrick v. Nelson, 448 F.2d 25 (9th Cir. 1971); People v. Prochnau, supra. Thus, we conclude that if a driver is unable to produce proof of registration, the officer may conduct a limited search of the car for evidence of automobile ownership. Although inevitably no two cases are identical, the following decisions lend support to this conclusion. Kendrick v. Nelson, supra; Draper v. State, supra; People v. Martin, 23 Cal.App.3d 444, 100 Cal.Rptr. 272 (1972); People v. Prochnau.

When in the course of his justifiable search Officer Carstensen observed marijuana, he was not bound to ignore it even though the marijuana was not related to his purpose in seeking the registration card for the vehicle. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L. Ed. 1399 (1947); State v. Fassler, 108 Ariz. 586, 503 P.2d 807 (filed November 28, 1972); State v. Vaughn, 12 Ariz.App. 442, 471 P.2d 744 (1970).

At this point there was probable cause to arrest defendant for possession of marijuana. In these circumstances, it was permissible to search at the place of arrest and as incident thereto, the locked trunk. Chambers v. Maroney, supra; People v. Vermouth, supra. While it is true that Officer Carstensen claimed he was still looking for the registration in the locked trunk, probable cause is determined by objective standards. State v. Vaughn, supra. This standard having been met, the search of the trunk was justified.

Judgment affirmed.

HATHAWAY and HOWARD, JJ., concur.