801 P.2d 489

**STATE of Arizona, Appellant,**

v.

**Roberto Gonzalez ACOSTA, Appellee.**

**No. 1 CA–CR 89–306.**

Court of Appeals of Arizona,
Division 1, Department D.

Nov. 13, 1990.

Charles R. Hastings, Yavapai Co. Atty.
by Julia W. Stoner, Deputy Co. Atty., Prescott, for appellant.

Lawrence W. Katz, Prescott, for appellee.

## OPINION

EHRLICH, Judge.

Roberto Gonzalez Acosta, the defendant, was indicted for one count of possessing cocaine and one count of transporting cocaine. He filed a motion to suppress the cocaine found during a search of the car he was driving. After an evidentiary hearing, which included the testimony of the defendant and three officers, the court granted the motion to suppress. The state timely appealed. We affirm the trial court's suppression of the evidence.

### FACTS

In reviewing a trial court's ruling on a motion to suppress, we consider the facts in the light most favorable to upholding the ruling. *State v. Morrow,* 128 Ariz. 309, 310, 625 P.2d 898, 899 (1981).

On the evening of October 16, 1988, Arizona Department of Public Safety (DPS) Officer Sandra Pritchett was patrolling Interstate Highway 40 in northern Arizona. Her attention was attracted by a dark-colored Chevrolet Camaro, which she determined to be traveling about 53 miles per hour in a 65 mile-per-hour zone. She followed the vehicle and saw it cross over the highway dividing line several times. She testified that she was concerned that the driver was simply a poor driver or one who was sleepy or drunk, or that there was a problem with the vehicle. Officer Pritchett stopped the vehicle for unsafe lane usage.

Officer Pritchett asked the defendant for his driver's license and the automobile's registration. The defendant gave her a California identification card (not a driver's license) and a California registration document. Officer Pritchett called in the identification and learned that the defendant had no driver's license. She also learned that the registration was in the name of a California man, not the defendant.

When asked who owned the vehicle, the defendant said that he did not know the owner, but offered the names "Ramon" and "Miguel." The defendant said that he was very tired, that he had been driving for six hours, and that he was on his way to Texas.

Officer Pritchett thought that the car could have been stolen. She asked the defendant if there were any drugs or weapons in the car, to which he replied that there were not. She then asked if she could look in the car, in response to which Officer Pritchett believed that the defendant consented. The officer looked under the seats of the vehicle, then in the console.

While standing beside the vehicle, Officer Pritchett had noticed that the right rear interior panel was loose. After looking in the interior of the car, Officer Pritchett asked the defendant to open the rear portion of the vehicle. The defendant gave her the keys and the officer opened the hatchback. The plastic bolts holding in the rear interior panel were halfway out; Officer Pritchett unscrewed them and pulled away the panel. Inside the compartment she saw a "bag of rags" and a jack. She moved the items "over a little bit and I saw what I believed to be cocaine, kilos." Officer Pritchett then called Officer Rene Valencia for backup.

Officer Pritchett told Officer Valencia that the defendant spoke Spanish, so Officer Valencia informed the defendant of his *Miranda*[1] rights in Spanish. All of the discussions between Officer Valencia and the defendant were in Spanish.

The defendant was arrested and taken to the police station in Prescott. There, he was interviewed by Officer Gary Goldsmith, who spoke only a little Spanish. However, between the Spanish that Officer Goldsmith knew, the English that the defendant knew, and hand gestures, Officer Goldsmith was able to interview the defendant without a translator. The defendant told Officer Goldsmith that he had been paid $500 or $600 by an unidentified man in a bar in the Los Angeles area to drive the car to San Antonio, leave the car at the airport, and fly back to Los Angeles.

### STANDING

■ The first issue raised by the state is whether the defendant, who did not own

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the Camaro, has standing to challenge the search and seizure. The state relies upon *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). In *Rakas*, the United States Supreme Court set forth a guideline for determining whether a person affected by an automobile search has standing to challenge the search. It held that, in order for a person to have standing, he must have had a legitimate expectation of privacy in the vehicle. 439 U.S. at 143, 99 S.Ct. at 430. The Court concluded in *Rakas* that the persons had no standing to challenge the search because they were neither owners nor borrowers of the vehicle, but mere passengers in it at the time it was searched.

Other courts which have directly addressed the issue of whether a non-owner driver has standing to object to a search have held that the driver does have standing, finding that a legitimate expectation of privacy did exist. *E.g., United States v. Miller*, 821 F.2d 546, 548–49 (11th Cir.1987) (finding standing to search car borrowed from friend); *United States v. Portillo*, 633 F.2d 1313, 1317 (9th Cir.1980) (finding standing to search car borrowed from friend), *cert. denied*, 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981). The Arizona cases cited by the state do not deal with non-owner-drivers of automobiles and therefore are unpersuasive.

Here, the defendant was the driver of the vehicle searched. Although the defendant admitted that he did not own the automobile, he claimed that it had been loaned to him. Officer Pritchett's investigation of the vehicle did not reveal that it had been reported stolen. As the driver of the borrowed vehicle, the defendant had a reasonable expectation of privacy regarding its contents. Therefore, we find that the defendant has standing to challenge the search and seizure.

## INVESTIGATIVE STOP

 The next issue raised is whether Officer Pritchett had a reasonable suspicion to stop the vehicle. At the evidentiary hearing, the defendant argued that Officer Pritchett stopped the vehicle not because of a reasonable suspicion of criminal conduct, but rather due to the fact that the defendant is Hispanic, and because she suspected that he might be transporting drugs. Whether a reasonable suspicion exists to justify an investigatory stop is a mixed question of law and fact and is therefore reviewed *de novo*. *State v. Martinez*, 1990 WL 17818, 55 Ariz.Adv.Rep. 65, 66 (App., February 27, 1990). An officer may stop an automobile and detain the driver for investigatory purposes when the totality of the circumstances gives rise to a particularized and founded suspicion that the person is engaged in criminal activity. *E.g., United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981); *State v. Graciano*, 134 Ariz. 35, 37, 653 P.2d 683, 685 (1982).

The trial court found that Officer Pritchett began to follow the defendant because he was driving 53 miles per hour in a 65 mile-per-hour zone. It further found that the defendant had crossed the line dividing the lanes by a tire's width as many as six times. These findings were supported by the evidence. However, the trial court then concluded that there was no reasonable suspicion warranting the traffic stop: "[I]t's my finding that this officer at this time [of the stop] in this particular case didn't even have a hunch [of illegal activity]."

The Seventh Circuit recently considered whether, in a similar situation, reasonable suspicion existed to stop a vehicle. In *United States v. Garcia*, 897 F.2d 1413 (7th Cir.1990), the defendants' pickup truck was stopped for traveling 50 miles per hour in a 45 mile-per-hour zone. The police officer subsequently found marijuana in the truck, and arrested the defendants. On appeal, the defendants claimed that the officer did not have reasonable suspicion to stop the truck, and alleged that they were stopped merely because they were Hispanic and traveling north in a vehicle with out-of-state license plates. The court held that:

> While such conduct, if unsupported by any suspicion other than race, would clearly raise serious fourth amendment concerns, this is not the case here.

Trooper Baker pulled the defendants over for speeding. It is uncontestable that traveling at any speed over the posted speed limit is a traffic offense and a trooper is justified in stopping a vehicle for the offense. Therefore, we must conclude that the stop of Carlos' vehicle was proper.

*Id.* at 1419.

In *State v. Winter,* 146 Ariz. 461, 706 P.2d 1228 (App.1985), an officer stopped a vehicle because it was traveling against the lane divider, weaving between lanes, and without an expiration date sticker on its Missouri license plate. Upon investigation, the officer learned that the vehicle was stolen, and arrested the defendant. The defendant attempted to suppress evidence obtained during the investigatory stop by arguing that the stop was not based upon a particularized and founded suspicion by the officer that a crime was being committed. The court, in upholding the stop, stated:

> Officer Hernandez testified that appellant was driving close to the median barrier on the freeway and was weaving inside the lane. Believing appellant to be tired or intoxicated and in violation of a law which requires vehicles to travel within one lane, she stopped appellant. We need not decide whether the absence of an expiration sticker on the Missouri plates warranted the stop because the foregoing facts were sufficient to give rise to the officer's particularized and founded suspicion of criminal activity.

*Id.* at 466–67, 706 P.2d at 1233–34.

In the case before us, the court's ruling on this issue was clearly erroneous. There was reasonable suspicion for Officer Pritchett to stop the Camaro. As stated in *Garcia* and *Winter,* the violation of a traffic law provides sufficient grounds to stop a vehicle. In this case, as the trial court found, the defendant's car crossed the dividing line numerous times, thus constituting the offense of unsafe lane usage.[2] In addition, Officer Pritchett's rationale for stopping the defendant out of concern that

his driving indicated that he was either tired or intoxicated, or a poor driver, is the same reasoning accepted by this court in *Winter.* It does not matter what underlying motive, if any, Officer Pritchett had when she made the stop. The relevant legal question is whether there were valid objective reasons for making the stop. *State v. Jeney,* 163 Ariz. 293, 296, 787 P.2d 1089, 1092 (App.1989). We hold that there was reasonable suspicion to stop the vehicle.

## SEARCH OF VEHICLE

■ The next issue raised is whether there was any legal basis for the search of the interior of the vehicle. The parties' trial court argument largely centered on the issue of consent. The trial court found that there had been no consent.

A finding that there was no consent will not be overturned unless clearly erroneous. *E.g., United States v. Henry,* 615 F.2d 1223, 1230 (9th Cir.1980). The validity of consent is determined by considering, in light of all the circumstances, whether the consent was voluntary. *State v. Smith,* 123 Ariz. 231, 241, 599 P.2d 187, 197 (1979), citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. King,* 140 Ariz. 602, 604, 684 P.2d 174, 176 (App.1984). We find that the trial court's ruling was sufficiently supported by the evidence.

The trial court in this case was particularly concerned about the defendant's ability to speak English. The defendant's minimal comprehension of English was established by Officer Goldsmith's testimony. Officer Valencia testified that he spoke with the defendant exclusively in Spanish. One factor to be considered in determining the voluntariness of consent is an accused's knowledge of his right to refuse consent. *Smith,* 123 Ariz. at 241, 599 P.2d at 197. If the defendant did not understand what Officer Pritchett was saying to him, his "consent" could not have been voluntary.

---

**2.** A.R.S. § 28–729(1) states: "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that

lane until the driver has first ascertained that the movement can be made with safety."

The trial court's ruling on this issue was not clearly erroneous.

■ The state argues that there is an alternative basis for the search of the interior of the car, based on Officer Pritchett's concern that the car was stolen. At trial, the state urged:

> When [the defendant] cannot identify who the owner of the vehicle is or who even gave him permission to drive the vehicle, coupled with the fact that he tells [Officer Pritchett] he has just come from California and had been driving six hours, she has some kind of reason at that point, Your Honor, to suspect that that vehicle may be stolen.

The trial court failed to address this issue in its ruling. Nonetheless, we consider it and find that Officer Pritchett had a legal basis to search the interior of the car, but only such places as she reasonably could expect to find vehicle ownership documents.

In *State v. Bedoni*, 161 Ariz. 480, 484, 779 P.2d 355, 359 (App.1989), this court found that a vehicle search was valid when the name given by the driver did not match the name of the registered owner, and when there was a question of the identity of the driver. The court concluded that evidence of the defendant's true identity, placed between the defendant's door and his seat, was properly admitted.

In *State v. Taras*, 19 Ariz.App. 7, 504 P.2d 548 (1972), the defendant attempted to elude the police. When caught, he gave the officer a valid Arizona driver's license, but he told the officer that there was no registration card in the car. The officer entered the car to search for the registration, and found baggies of marijuana in the glove compartment. On appeal, the defendant argued that the search for the vehicle's registration was not justified. The court concluded "that if a driver is unable to produce proof of registration, the officer may conduct a limited search of the vehicle for evidence of automobile ownership." *Id.* at 11, 504 P.2d at 552; *see also English–Clark v. City of Tucson*, 142 Ariz. 522, 525, 690 P.2d 1235, 1238 (App.1984) (vehicle

search valid when defendant refuses to produce registration).

Here, the defendant had no driver's license and he was not the registered owner of the vehicle. He knew neither the name of the vehicle's owner nor who had loaned him the car. A police officer certainly could have a reasonable suspicion that the car was stolen and would have cause to search for registration papers where they "might reasonably be found." *See Taras*, 19 Ariz.App. at 11, 504 P.2d at 552; *see also Kendrick v. Nelson*, 448 F.2d 25, 27–28 (9th Cir.1971).

As noted in *Taras*, however, such a search is to be limited to places where registration documents may reasonably be found. Based on that standard, the marijuana found in the glove compartment by the officer in *Taras* was admissible. The question then in this case is whether the search of the rear interior compartment was within the permissible scope of a registration search. We believe that it was not. To find the cocaine, Officer Pritchett had to unscrew plastic bolts and remove the panel covering the compartment. She then had to push aside a jack and some rags to see the packages of cocaine. Such a search is not reasonable as a search for registration papers. *Cf. Arizona ₊v. Hicks*, 480 U.S. 321, 327–28, 107 S.Ct. 1149, 1154, 94 L.Ed.2d 347 (1987) (not plain view when police had to move stereo equipment to obtain serial number of item).

■ The state also attempts to justify the search under the inevitable discovery theory. Under that theory, evidence obtained as a result of an unlawful search need not be suppressed when, in the normal course of police investigation and conduct, and absent the illicit conduct, the evidence would have been discovered inevitably or ultimately. *Nix v. Williams*, 467 U.S. 431, 443–44, 447, 104 S.Ct. 2501, 2508–09, 2511, 81 L.Ed.2d 377 (1984); *State v. Lamb*, 116 Ariz. 134, 138, 568 P.2d 1032, 1036 (1977).

The state's argument is that the defendant could either have been arrested for driving without a license, or have been precluded from driving the car because he

lacked a license. The state then could have impounded the car and an inventory search would have been conducted; the inventory search inevitably would have revealed the cocaine. The defendant first argues that the inevitable discovery doctrine does not apply in this case, and then urges that Officer Pritchett's search of the vehicle went beyond the scope of a legitimate inventory search.

We will assume for purposes of argument that an inventory search would have been conducted. In this case, whether or not the defendant could have been arrested for driving without a license, in violation of A.R.S. § 28–411, Officer Pritchett still could not have let him drive the car. In view of the confusion as to how the defendant got the car, the nature of his driving, and the fact that he could not legally drive the car, impoundment of the car and a subsequent inventory would have been reasonable. *See Colorado v. Bertine*, 479 U.S. 367, 374, 107 S.Ct. 738, 743, 93 L.Ed.2d 739 (1987). However, while inventory searches of vehicles are permissible without probable cause, *e.g., Bertine, id.; Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983); *South Dakota v. Opperman*, 428 U.S. 364, 373–75, 96 S.Ct. 3092, 3099–3100, 49 L.Ed.2d 1000 (1976), the result in this case cannot be made legitimate as an inventory search because there is no evidence in the record as to what the governing department regulations were regarding inventory searches.

In *Bertine*, a police officer arrested the defendant for drunk driving. After the defendant was taken into custody, but before his van was taken to the impoundment lot, another officer inventoried the van's contents in accordance with the local police procedures. The officer, upon opening a closed backpack, found drugs and other evidence. The Court held that the evidence, discovered in the course of a reasonable, warrantless inventory search, was admissible. It did not matter that the defendant had an expectation of privacy in the backpack. The Court found it unnecessary to require the police, before conducting an inventory of a container, to weigh in every case the individual's privacy interest against the possibility that the container might hold valuable or dangerous items. The Court emphasized the existence of standard criteria to support the search. 479 U.S. at 375, 107 S.Ct. at 743. It noted that its "decisions have always adhered to the requirement that inventories be conducted according to standardized criteria." 479 U.S. at 374 n. 6; 107 S.Ct. at 742 n. 6. *See Florida v. Wells*, —— U.S. ——, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990) (otherwise valid inventory search may not extend to the opening of closed containers in absence of policy permitting such opening). As stated in 3 W. LaFave, *Search and Seizure*, § 7.4(a) at 109, "[w]hat is needed in the vehicle inventory context, then, as is true of many other types of inspections or regulatory searches, is not probable cause but rather a regularized set of procedures which adequately guard against arbitrariness." Because this record is void of evidence with regard to the nature and scope of DPS inventory searches, we have no way of knowing whether such a search would have "inevitably" led to the discovery of the cocaine.

When reviewing a motion to suppress, the trial court's ruling shall not be disturbed absent clear and manifest error. *State v. Hicks*, 133 Ariz. 64, 73, 649 P.2d 267, 276 (1982); *State v. Dungan*, 149 Ariz. 357, 363, 718 P.2d 1010, 1016 (App.1985). The trial court will be upheld if it makes the right ruling, even if for the wrong reason. *State v. Perez*, 141 Ariz. 459, 464, 687 P.2d 1214, 1219 (1984); *State v. Harris*, 152 Ariz. 150, 151, 730 P.2d 859, 860 (App.1986). For the above reasons, the trial court was correct in granting the motion to suppress, and we affirm that ruling.

BROOKS, P.J., and TAYLOR, J., concur.