169 P.3d 651

**STATE of Arizona, Appellee,**

v.

**Richard Russell ROJERS, Appellant.**

**No. 1 CA–CR 06–0445.**

Court of Appeals of Arizona, Division 1, Department B.

Nov. 1, 2007.

Terry Goddard, Attorney General by Randall M. Howe, Chief Counsel Criminal Appeals Section And Katia Méhu, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender by Spencer D. Heffel, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

BARKER, Judge.

¶ 1 This opinion examines whether the trial court properly denied the motion of Richard Russell Rojers ("Rojers") to suppress evidence that was obtained from an allegedly unconstitutional automobile search. For the reasons that follow, we affirm.

### *Factual and Procedural Background*

¶ 2 After receiving a tip from a concerned neighbor, the police conducted surveillance

on Rojers's apartment, hoping to apprehend him based on an outstanding misdemeanor warrant. When Rojers exited his apartment and drove away, the police followed in unmarked cars. He was driving "erratic[ally]," at a "high rate of speed," and "not using any turn signals." Rojers was also being followed by a friend.

¶ 3 Rojers drove to a nearby gas station where he parked next to a gas pump and began to examine the pressure of his front-right tire. His friend parked her car nearby.

¶ 4 Having been told that Rojers had a propensity for violence, the officers approached Rojers with their weapons drawn and ordered him to lie on the ground. Instead of obeying, Rojers stood up, walked away with his back to the officers, removed a pistol from his waistband, and tossed it under a nearby car. He then lay down on the pavement and was handcuffed.

¶ 5 When Rojers realized that the officers were going to move the car and possibly search it, he became extremely "upset," "loud," and "agitated." One of the officers, Detective Ferree, moved the car away from the gas pump because it was disrupting traffic in and out of the gas station, and parked it in a nearby parking lot. Inside the car, Detective Ferree noticed two cell phones and a bag on the passenger's seat. He opened the bag and found a black digital scale and some notebooks with names and phone numbers inside. The digital scale "appeared to have a drug residue" on it.

¶ 6 Detective Ferree also noticed a plastic bag containing methamphetamine underneath the radio in a vacant part of the dash that could be seen by sitting in the car and leaning back, without touching or manipulating any part of the car. The car was then taken to the station and impounded. As part of the process, the contents of the car were inventoried.

¶ 7 Before trial, Rojers moved to suppress the evidence discovered inside the car on the grounds that the search violated his Fourth Amendment rights. The trial court denied the motion, reasoning that the evidence would inevitably have been discovered during the inventory search that would have taken place after the car was impounded. At the same time, the court ruled that the search incident to arrest exception did not apply because the officers already had custody of Rojers before the search took place.

¶ 8 Rojers was ultimately convicted of possession of dangerous drugs for sale, possession of drug paraphernalia, and misconduct involving weapons (possession during commission of a felony). He was sentenced to a total of twenty years in prison. He timely appeals. We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1)(2003), 13–4033(A)(1)(2001).

***Discussion***

¶ 9 On appeal, Rojers argues for the first time that the record cannot support the trial court's ruling because it is devoid of any evidence regarding the police departmental policies that are required to perform an inventory search. The State responds that the search qualifies either as a search incident to an arrest or under the doctrine of inevitable discovery. We determine that the search incident to arrest exception is precluded by a recent Arizona Supreme Court decision. We find, however, sufficient evidence of standardized procedures to affirm on the basis of inevitable discovery.

*1. The Search Incident to Arrest Exception*

¶ 10 Under *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *See Thornton v. United States,* 541 U.S. 615, 619, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004) (The rationale behind this exception is based on "the need to disarm the suspect in order to take him into custody" and "the need to preserve evidence for later use at trial."). The State argues that *Belton* applies and this search was permissible as a search incident to arrest.

¶ 11 Prior to the Arizona Supreme Court's decision in *State v. Gant,* 216 Ariz. 1, 162 P.3d 640 (2007), we would have agreed with

the State's assertion that the search of Rojers's car would qualify. Rojers was an occupant of the vehicle; he was kneeling next to the car checking the pressure of a tire when approached by the police officers; he was arrested within either fifteen to thirty or thirty to forty-five seconds of exiting the vehicle; and he walked only about fifteen to twenty feet away from the car before being apprehended.

¶ 12 In *Gant*, however, the Arizona Supreme Court held that "when the scene is secure and the arrestee is handcuffed, seated in the back of the patrol car, and under the supervision of a police officer," a warrantless search of the arrestee's vehicle does not fit into the search incident to arrest exception and is not justified. 216 Ariz. at 2, ¶ 1, 162 P.3d at 641. In light of *Gant*, we find that the search of Rojers's vehicle does not fit within the search incident to arrest exception since he was handcuffed and under another officer's control when the search took place.

## 2. Doctrine of Inevitable Discovery

### A. Standard of Review

■ ¶ 13 On appeal, Rojers claims that because there is no evidence of the standardized procedures that would have led to an inventory search of his car in the record, the trial court's denial of his motion to suppress is error. This was not an argument that was advanced to the trial court in the motion or at the suppression hearing and thus is waived unless the alleged absence of evidence regarding police procedures rises to the level of fundamental error. *See State v. Jones*, 185 Ariz. 471, 480–82, 917 P.2d 200, 209–211 (1996) ("Because defendant did not make this argument in his motion to suppress, our inquiry is limited to fundamental error analysis."); *State v. Freeland*, 176 Ariz. 544, 549, 863 P.2d 263, 268 (App.1993) (Absent fundamental error, defendant waived version of suppression argument that was raised for the first time on appeal.).

¶ 14 Throughout the hearing, Rojers remained silent as to the issue of standardized procedures. In his motion to suppress, the closest he came to objecting to a lack of evidence regarding the police procedures occurred in the following passages, excerpted from his motion to dismiss and supplement thereto:

> While it is permissible to perform a warrantless "administrative" search of a[n] impounded vehicle, the search must be routine and not a pretext concealing an investigatory police motive. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 30902[3092][, 49 L.Ed.2d 1000] (1976).
>
> In this case, the vehicle had not been impounded at the time of the search. Officer Ferree specifically states that he searched the vehicle incident to arrest and therefore, the search was not conducted for any sort of administrative or inventory purposes and was absolutely a pretext for underlying investigatory police motive.
>
> . . .
>
> With respect to the County Attorney's reference to ARS 13–4305 and 13–4306—prior to the illegal search there was absolutely no evidence that the car contained any narcotics or any evidence of any sort of criminal activity that would permit the seizure and inventory of the vehicle without a warrant.

¶ 15 Though these passages discuss factors relevant to "inevitable discovery" analysis, they never, even indirectly, complain about a lack of evidence regarding police procedures. Neither does the case cited by Rojers, *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), address this argument.[1] In these passages, Rojers is merely making the following peripheral points, none of which were sufficient to alert the trial court that there was no evidence regarding police procedures in the record: (1) that inventory searches must not be pretextual, (2) that the vehicle was not impounded at the time of the search, and (3) that before the search, no evidence of drugs had been found. Accordingly, we apply a fundamental error analysis.

---

1. *Opperman* addresses the legality of inventory searches of automobiles generally, and holds that such searches do not violate the Fourth Amendment as long as they are not pretextual. *Id.* at 376, 96 S.Ct. 3092.

¶ 16 The fundamental error standard means that unless the error goes to the "foundation of [Rojers's] case, ... takes away a right that is essential to his defense, and [is] of such magnitude that he could not have received a fair trial," *State v. Henderson,* 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005), the trial court's ruling will be affirmed. There must also be a showing of prejudice before fundamental error will result in reversal. *Id.* at 567, ¶ 20, 115 P.3d at 607.

¶ 17 Additionally, as to the motion to suppress, all reasonable inferences are drawn in favor of upholding the court's factual determinations, *State v. Guillory,* 199 Ariz. 462, 465, ¶ 9, 18 P.3d 1261, 1264 (App.2001), and "we are obligated to uphold the trial court's ruling if legally correct for any reason." *State v. Cañez,* 202 Ariz. 133, 151, ¶ 51, 42 P.3d 564, 582 (2002). In the motion to suppress context, "we consider the evidence presented at the suppression hearing, as well as any reasonable inferences therefrom, in the light most favorable to upholding the trial court's ruling." *State v. Sabin,* 213 Ariz. 586, 591, ¶ 17, 146 P.3d 577, 582 (App.2006).

## B.  The Doctrine

¶ 18 "The inevitable discovery doctrine, which is an exception to the exclusionary rule, provides that illegally obtained evidence is admissible '[i]f the prosecution can establish by a preponderance of the evidence that the illegally seized items or information would have inevitably been seized by lawful means.'" *Jones,* 185 Ariz. at 481, 917 P.2d at 210 (quoting *State v. Ault,* 150 Ariz. 459, 465, 724 P.2d 545, 551 (1986)).

¶ 19 While our law holds that evidence which is obtained in violation of a constitutional right should be excluded to deter unlawful police conduct, it serves no purpose to put the government in a worse position than it would have been in had no police misconduct occurred. *Nix v. Williams,* 467 U.S. 431, 446, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) ("Exclusion of physical evidence that would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial."). "Inevitability" is measured by a "preponderance of the evidence," or "more likely than not" standard, not by a "clear and convincing" standard that the word "inevitable" might intuitively suggest. *See id.* at 444 n. 5, 104 S.Ct. 2501.

## C.  Application

¶ 20 On appeal, Rojers cites a number of cases that discuss the constitutional requirements for valid inventory searches; namely, that they must not be a pretext for a search for evidence, that they must occur according to standardized procedures, and that evidence of these standardized procedures must be in the record to uphold a conviction, *e.g., Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *United States v. Marshall,* 986 F.2d 1171 (1993); *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983).

¶ 21 However, these cases, while informative, do not address the question at hand. Our question is not whether there is sufficient evidence in the record to justify the inventory search that actually occurred, but rather, whether the drugs and drug paraphernalia would have been discovered as a result of the standard procedures for an inventory search. Rojers contends, relying in part on *State v. Acosta,* 166 Ariz. 254, 801 P.2d 489 (App.1990), that there is insufficient evidence of those procedures.

¶ 22 In *Acosta,* the question before the court was whether an inventory search would have uncovered drugs that were hidden in the rear interior panel of a hatchback and were accessible only by unscrewing plastic bolts holding the panel in place and by moving a bag of rags and a jack. *Id.,* 166 Ariz. at 259, 801 P.2d at 494. There was no evidence in the record regarding the nature and scope of the inventory search that would have been conducted. *Id.* Accordingly, the inevitable discovery doctrine could not be appropriately applied. *See id.*

¶ 23 The facts here differ from *Acosta* in that the evidence at issue was either in plain view or in locations that would have been typically searched. However, Rojers argues on appeal that, like *Acosta,* there is no evidence of what the procedures were. As dis-

cussed above, for this argument to result in reversal, Rojers must establish that the absence of evidence regarding the procedures rises to the level of fundamental error.

¶ 24 We find that no such error exists in this case. Though Rojers is correct that the testimony as to *procedures* is scant, this is not so as to the facts to which the procedures would apply. There is abundant evidence that was introduced as to the location of the drugs and the fact that there was an inventory search and that the car was impounded. Counsel for the State specifically argued that "[e]ither way the vehicle would have been impounded and [the] inventory search of the vehicle" would have occurred. Had Rojers raised the argument he makes on appeal at the suppression hearing, any deficiency could have been cured either by the State introducing evidence or by the trial court taking judicial notice of the procedures.[2] At this stage, absent fundamental error, it is too late for Rojers to complain that evidence of the procedures is not in evidence. Any contrary result would create an inappropriate incentive for defendants to save their best arguments in favor of suppression until appeal instead of presenting them in a timely manner at the suppression hearing. *See Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607 ("We impose this additional limitation upon obtaining relief for fundamental error to discourage a defendant from 'tak[ing] his chances on a favorable verdict, reserving the "hole card" of a later appeal on [a] matter that was curable at trial, and then seek[ing] appellate reversal.'") (citing *State v. Valdez*, 160 Ariz. 9, 13–14, 770 P.2d 313, 317–18 (1989) (overruled on other grounds)).

¶ 25 Judicial notice is discretionary, and it may be taken at any stage of the proceeding. Ariz. R. Evid. 201(c), (f). As one commentator notes, "[a]ppellate courts will often utilize the doctrine [of judicial notice] to add facts necessary to affirm the trial court." 1 Joseph M. Livermore, Robert Bartels, & Anne Holt Hameroff, Arizona Practice: Law of Evidence § 201.0 (4th ed.2007) (citing *In re Roy L.*, 197 Ariz. 441, 447 at ¶ 20, 4 P.3d 984, 990 (App.2000); *Miceli v. Indus. Comm'n*, 135 Ariz. 71, 74, 659 P.2d 30, 33 (1983); *State v. Hunt*, 118 Ariz. 431, 436, 577 P.2d, 717, 722 (1978); *Hovatter v. Shell Oil Co.*, 111 Ariz. 325, 328, 529 P.2d 224, 227 (1974); *Southwestern Freight Lines, Ltd. v. Floyd*, 58 Ariz. 249, 266–67, 119 P.2d 120, 128 (1941); and *State v. McGuire*, 124 Ariz. 64, 65, 601 P.2d 1348, 1349 (App.1978)).

¶ 26 Here, though testimony as to procedures was limited, the standards for an inventory search by the City of Phoenix Police Department are publicly available, Phoenix Police Department Operations Order 4.11 at 9.E(1)-(4), Rev. 07/01, *available at* http://www.phoenixpolice.com/ppdops/, and a proper subject for judicial notice. We explicitly take judicial notice of the procedures contained in the Police Operations Orders, as their content is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Ariz. R. Evid. 201(b); *see Arizona Mun. Water Users Ass'n v. Arizona Dept. of Water Resources*, 181 Ariz. 136, 141 n. 9, 888 P.2d 1323, 1328 n. 9 (App.1994) (taking judicial notice on appeal of published version of Second Management Plan adopted by Department of Water Resources); *Climate Control, Inc. v. Hill*, 86 Ariz. 180, 188, 342 P.2d 854, 859 (Ariz.1959) ("[J]udicial notice may be taken of the regulations of administrative bodies."); *Brandes v. Mitterling*, 67 Ariz. 349, 354, 196 P.2d 464, 467 (1948) (taking judicial notice of civil air regulations); *see also Driebel v. City of Milwaukee*, 298 F.3d

---

2. Indeed, there is at least an argument that the trial court did take judicial notice of the procedures. Before ruling, based on the evidence presented, the trial court stated: "I think that the State has a strong argument with respect to inevitable discovery because the vehicle would have been taken from that location and impounded and as a part of the impounding process, it would have been searched for and the contents inventoried." The court's ultimate ruling also potentially reflects implicit judicial notice of in-

ventory procedures: "I am going to order that or find that a search—inventory search that would have been conducted as a result of impounding the car, which is the result of his arrest, would have revealed the—the items that were found in the car and therefore I am going to deny the motion to suppress those items." However, since judicial notice may be taken "at any stage of the proceeding," we need not resolve this question here. Ariz. R. Evid. 201(f).

622, 631 n. 2 (7th Cir.2002) (taking judicial notice on appeal of certain sections of the Milwaukee Police Department Manual); *Church v. Jamison,* 143 Cal.App.4th 1568, 1579 n. 19, 50 Cal.Rptr.3d 166 (2006) (taking judicial notice on its own motion on appeal of the Enforcement Policies and Interpretations Manual of the Division of Labor Standards Enforcement).

¶ 27 The standardized procedures described in the Operations Orders provide as follows:

(1) All vehicles that are to be towed that come under the control of officers will be inventoried prior to the tow.

. . .

(3) When an owner/driver of a vehicle requests that the vehicle be locked and left legally parked, officers will inventory the vehicle.

(4) If a responsible party is present who is willing (with the owner/driver's permission) to take responsibility for the vehicle, no inventory will be conducted.

Phoenix Police Department Operations Order 4.11 at 9.E(1)-(4), Rev. 07/01, *available at* http://www.phoenixpolice.com/ppdops. Based on the evidence presented at the suppression hearing, the trial court did not err in concluding that the evidence at issue would have been discovered pursuant to these standardized procedures.

¶ 28 Assuming that Officer Ferree had moved the car without opening the bag or noticing the clear plastic baggie of drugs in the console, what then would have happened to the car? There are three possibilities: (1) it would have been left legally parked, (2) it would have been towed, or (3) it would have been left with a responsible party. *Id.* Under each of these three scenarios, on the facts presented at the suppression hearing, the trial court was entitled to find by a preponderance of the evidence that the drugs and drug paraphernalia would have been discovered.

¶ 29 Under the first two scenarios, the inventory of the car is automatic:

(1) All vehicles that are to be towed that come under the control of officers *will be inventoried* prior to the tow.

. . .

(3) When an owner/driver of a vehicle requests that the vehicle be locked and left legally parked, officers *will inventory* the vehicle.

*Id.* at 9.E(1), (3) (emphasis added).

¶ 30 Standard inventory procedures include opening closed containers when the contents cannot otherwise be ascertained. *Id.* at 9.E(1)(d) ("Closed containers will be opened for the purposes of an inventory when the contents cannot be discovered from examining the container's exterior."). Thus, the bag sitting in plain view on the seat would inevitably have been opened, and the ledgers and scale would inevitably have been discovered.

¶ 31 Additionally, the departmental policy requires officers to "look in all areas where valuables or dangerous items could reasonably be located." *Id.* at 9.E(1)(c). The plastic baggie containing the drugs could be seen by merely sitting in the car and leaning back. Thus, the drugs would inevitably have been discovered as well.

¶ 32 The third possibility under the standardized procedures, leaving the vehicle with a responsible individual, does not require that an inventory search be conducted. *Id.* at 9.E(4). However, the evidence at the suppression hearing supports that there was no such person who was present at the time. The only other person referenced was a female friend of Rojers, who was also driving a vehicle. As Detective Ferree stated, "my first concern was … with a female in a vehicle that appeared to be following the defendant to the gas station. I wanted to make sure that somebody had an eye on her to avoid any possible tactical neglect." The officers believed that the two were traveling together. Rojers had thrown his weapon under her vehicle. Viewing the facts in a light most favorable to sustaining the trial court's decision, *State v. Gay,* 214 Ariz. 214, 223, ¶ 30, 150 P.3d 787, 796 (App.2007), the preponderance of the evidence, *see Nix,* 467 U.S. at 444, 104 S.Ct. 2501, supports a determination that leaving an unsearched vehicle with a potential accomplice, following an armed arrest, when one weapon had already

been discarded by the arrestee, was not a reasonable course for the police to follow.

¶ 33 Having taken judicial notice of the procedures, we find no error in the trial court's conclusion that the standardized procedures would have resulted in the inevitable discovery of the evidence. Further, there is no prejudice since the result at the suppression hearing would have been the same on the facts here. *See Henderson,* 210 Ariz. at 567, ¶ 20, 115 P.3d at 607 ("a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice" to prevail).

### *Conclusion*

¶ 34 For the reasons set forth above, we affirm.

CONCURRING: ANN A. SCOTT TIMMER, Judge, and PATRICIA A. OROZCO, Judge.