[Civ. No. 14156.   Second Dist., Div. One.   May 5, 1944.]

JULIA H. DALTON, Plaintiff, v. HELEN S. BALDWIN, Appellant; SEASIDE OIL COMPANY (a Corporation) et al., Respondents.

[Civ. No. 14157.   Second Dist., Div. One.   May 5, 1944.]

WILLIAM J. RIPLING et al., Plaintiffs, v. SEASIDE OIL COMPANY (a Corporation) et al., Respondents; HELEN S. BALDWIN, Appellant.

Betts & Garrison and Forrest A. Betts for Appellant.

Norris Montgomery and J. E. Delwiche for Respondents.

WHITE, J.—On the morning of April 24, 1941, appellant Helen S. Baldwin, one of the defendants in the court below, took her Buick automobile to a service station in the city of Santa Barbara to have the vehicle washed. The service station in question was one selling the products of cross-defendant Seaside Oil Company. The service station was painted in colors distinctive of Seaside Oil service stations, and upon the premises were certain products and advertisements of Seaside Oil Company products. There was hung over the pump-driveway and below the large word "Seaside" a sign in comparatively small letters, not indicating his connection, but carrying the name "Lorton S. Clough."

After Mrs. Baldwin's automobile had been washed, it was turned over by Clough to an employee named Forest Caufield, also named as a defendant herein, to be delivered to Mrs. Baldwin at her residence. While carrying out his commission, Caufield became involved in the automobile accident which gave rise to this litigation, and in which accident, Mrs. Mildred N. Ripling, driver of the other involved vehicle, and Mrs. Julia H. Dalton, her guest, were injured.

Subsequent to the filing of the two actions herein, attorneys for the plaintiffs and for defendants Clough and Seaside Oil Company negotiated a compromise of their litigation by way of a covenant not to sue further, pursuant to which agreement dismissals without prejudice were filed as to such last named defendants. In each case the covenant not to sue contained an indemnifying agreement whereby these plaintiffs bound themselves to indemnify defendants Clough and Seaside Oil Company against any claims or loss which such defendants might suffer because of plaintiffs' injuries or otherwise arising out of the accident.

In an endeavor to assert her rights under section 402 of the Vehicle Code, defendant, Mrs. Baldwin, having given possession of her automobile to defendants Clough and Seaside Oil Company, and they no longer being parties to the action by reason of the dismissal thereof as to them pursuant

to the aforesaid agreement not to sue, secured an ex parte order permitting her to file cross-complaints against Clough and Seaside Oil Company in each case. After filing and service of the aforesaid amended cross-complaints, each of the aforesaid cross-defendants filed demurrers and motions to strike the amended cross-complaints. The demurrers were sustained and the motions to strike were granted. From the formal judgment entered thereon in each case these appeals are prosecuted. It has been stipulated that the two cases may be consolidated for all purposes of appeal.

The first amended cross-complaints (hereinafter referred to as the cross-complaints) are the only pleadings requiring consideration on this appeal.

The first cause of action is predicated upon the allegation that Forest Caufield (who is also a cross-defendant) at the time of the happening of the accident was the agent and servant of the other defendants; that the complaint charges the defendant Mrs. Baldwin with responsibility because of her ownership of the Buick automobile, and then in each case alleges:

"That the cross-complainant was not present at the time said accident occurred, and that the driver of her car was not her agent or servant, and that in the event there is a judgment against her because of the provisions of Section 402 of the California Vehicle Code, she will be subrogated to all the rights of the plaintiffs and may recover from the operators of her automobile the total amount of any judgment and costs recovered against her as such owner."

The second cause of action in each case, sets out that the cross-defendants were bailees for hire, and that, if they were negligent, and if, because of such negligence, a judgment should be rendered in favor of plaintiffs and against Mrs. Baldwin, she will thereby be damaged in the sum of such judgment, and that such judgment against her can be predicated only upon proof of negligence on the part of the cross-defendants.

The third cause of action in each case is against the cross-defendant bailees for $250 damages to Mrs. Baldwin's automobile.

With reference to the last named causes of action, the trial court held that they did not come within the provisions of either section 389 or 442 of the Code of Civil Procedure.

Appellant, however, concedes that the third causes of action are so connected with the second causes of action that their validity must turn upon the ruling as to such second causes of action.

We are impressed that the questions involved and presented by this appeal may be thus epitomized:

Firstly,—May the owner of an automobile, whose liability, if any, for damages to plaintiff arises solely because of such ownership, rely upon her rights of subrogation so as to bring into the principal action the ones responsible to her under the statute, or must she await the outcome of the principal cause before asserting her rights against those to whom she gave permissive use of her automobile?

Secondly,—What is the meaning of the term "operator" as used in section 402 of the California Vehicle Code?

And finally,—What construction is to be given sections 389 and 442 of the Code of Civil Procedure in regard to when a cross-complaint may properly be filed under the provisions of the last named code sections?

Insofar as the first question is concerned, the trial court, by its judgment, decided that unless and until a recovery was first had against the owner of the involved automobile, no action could be maintained by such owner pursuant to the provisions of subdivision (d), section 402 of the Vehicle Code. In view of the language contained in the pertinent section, we do not see how a different interpretation can be arrived at. The wording of subdivision (d) is clear, concise and unequivocal. Applying to the words thereof their ordinary and logical meaning, according to the approved usage of the language (Code Civ. Proc., § 11), it would seem impossible to ascribe to the words, *"In the event a recovery is had* under the provisions of this section against an owner on account of imputed negligence, such owner is subrogated to all rights . . ." (italics added), any other meaning than that any right or cause of action in favor of such vehicle owner does not arise until "a recovery is had."

It is true, as contended by appellants, that both law and equity abhor a circuity of action, multiplicity of suits, and what is commonly referred to as "piece-meal litigation," but we are persuaded in the case at bar that whatever rights the subrogee-owner may have in this litigation do not arise under the clear wording of the statute until a recovery is had. In their present inchoate state, such rights cannot be litigated.

Manifestly, until the rendition of a judgment in favor of the "person injured," such subrogee-owner's rights do not attain a reality. And, until they arise, they cannot be made the subject of litigation.

We come now to a consideration of the legislative intent with regard to the rights of an owner as evidenced by the provisions of section 402 of the Vehicle Code. It is the contention of respondents that the language in subdivision (d) of the cited section restricts the rights to which the owner is subrogated to a recovery against the "operator" of the vehicle. While it is true the section reads that the owner may recover "from such operator the total amount of any judgment and costs recovered against such owner," we are not impressed with respondents' argument, because it is to be noted that subdivision (d) also provides that "such owner is subrogated to all the rights of the person injured or whose property has been injured." To us the word "all" means not only "any" right, or "every" right, but the entire inclusiveness of the word excludes no right whatever. What, therefore, are "all" of the rights of the plaintiffs to which the owner is subrogated? In the instant case, plaintiffs sued, as they had a right to do, not only defendant Caufield who was in actual control of the vehicle, but they joined as defendants Clough and Seaside Oil Company on the theory that Caufield was the agent of Clough and Seaside Oil Company, acting within the scope of his employment as such agent in delivering Mrs. Baldwin's automobile. If plaintiffs were successful in establishing such agency, then judgments against Caufield would have carried with them judgments against Clough and Seaside Oil Company. Were this to occur, then each plaintiff, as an "injured person" under the provisions of section 402 of the Vehicle Code, would be invested with the right to satisfy such judgments against either Caufield, Clough or Seaside Oil Company. We cannot conceive that in such a situation the Legislature, after clothing the owner with subrogation to "all" the rights of the "injured person," intended that such subrogated rights might be satisfied only against the "operator" of the vehicle involved. Such a construction would lead to the strange and certainly unjust situation wherein an employer, to whom actual permissive use of another's automobile was entrusted, could escape liability to the subrogee-owner by the simple process of hiring

an employee to drive the automobile. If, as the section provides, the owner is subrogated to "all rights" of "the person injured," then logically and of necessity it follows that included in such "rights" is the right to proceed against the defendant secondarily liable as well as the operator who is primarily liable. To hold otherwise would certainly deny to the subrogee-owner some of the "rights" belonging to "the person injured," thereby doing violence to the commonly accepted meaning of the language of the Legislature in clothing the vehicle owner with "all" the rights of such "person injured."

Respondents call our attention to the amendment to section 402 of the Vehicle Code adopted in 1943. As originally enacted, and as in force on April 24, 1941, the date of the accident here in question, subdivision (d) of section 402 read as follows:

"In the event a recovery is had under the provisions of this section against an owner on account of imputed negligence, such owner is subrogated to all the rights of the person injured or whose property has been injured and may recover from such operator the total amount of any judgment and costs recovered against such owner."

By the 1943 amendment, the following sentence was added to the above named subdivision:

"If the bailee of an owner with the permission, express or implied, of the owner permits another to operate the motor vehicle of the owner, then such bailee and such driver shall both be deemed operators of the vehicle of the owner within the meaning of subdivisions (c) and (d) of this section."

The adoption of the foregoing amendment, argue respondents, indicates a legislative intent that the recovery by a subrogee-owner could, prior to the amendment, be had only against the "operator," as that term is defined by section 70 of the Vehicle Code; that otherwise the amendment is meaningless. ■ It is true that the cases hold that an amendment to a prior act amounts practically to a demonstration of legislative intent to change the preexisting law, but the presumption arising from such amendment, that it was intended to change the meaning of the statute, applies only when there is a material change contained in the language of the amended act. (*Loew's Inc.* v. *Byram*, 11 Cal.2d 746, 750 [82 P.2d 1]).

■ In view of what we have heretofore said, it is at once apparent that in providing that in the event a recovery is

had, the vehicle owner is subrogated to *all* of the rights of the person injured, the Legislature intended to include such rights as the injured person had primarily against the actual "operator" of the vehicle and in addition thereto, such rights as the injured person had against others to whom liability was imputed by reason of the doctrine of *respondeat superior* or other secondary responsibility. When, therefore, in amending subdivision (d), section 402 of the Vehicle Code, the Legislature did not disturb the word "all" as it referred to the owner's rights in the preexisting law, it must be held that the amendment merely amplified or clarified what appears to us to have been the meaning of the section prior to the amendment, and that the language used in the amendment did not amount to a material change in the all inclusive rights possessed by the subrogee-owner under the statute as it existed prior to the 1943 amendment. In other words, we are constrained to hold that, under the preexisting statute, the owner possessed the rights referred to in the subsequent 1943 amendment.

In view of our holding that the rights to which the vehicle owner is subrogated do not arise until, and "in the event a recovery is had under the provisions of" section 402 of the Vehicle Code, it becomes unnecessary to consider or decide the question of whether a cross-complaint could properly be filed in the instant actions pursuant to the terms of sections 389 and 442 of the Code of Civil Procedure.

For the foregoing reasons, the judgments from which these appeals were taken, are, and each is, affirmed.

York, P. J., and Doran, J., concurred.