[No. F048224. Fifth Dist. Oct. 23, 2006.]

JOHN CHURCH, Plaintiff and Appellant, v.
DANIEL O. JAMISON et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the Summary of Issues and Conclusions, and parts I.–VI. and VIII.A. of Discussion.

---

COUNSEL

Motschiedler, Michaelides & Wishon and Russell K. Ryan for Plaintiff and Appellant.

Baker, Manock & Jensen and Glenn J. Holder for Wilcox, Hokokian & Jackson and Keith Wilcox as Amici Curiae on behalf of Plaintiff and Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth, Scott Harkless, Anil Pai and Marshall C. Whitney for Defendants and Respondents.

---

OPINION

**DAWSON, J.**—John Church sued his former employer for breach of contract, misrepresentation, and various Labor Code violations. We will call that lawsuit, which is not on appeal here, the "employment case." The superior court in that case sustained a demurrer to the Labor Code claims on the ground they were barred by the applicable statute of limitations.

Subsequently, Church brought a second action, which is the subject of the current appeal and which we will call the "malpractice case." It is a suit for legal malpractice against the attorney who filed the lawsuit in the employment case, respondents Daniel O. Jamison and the Law Offices of Daniel O. Jamison.[1] Church alleged Jamison's failure to file the complaint in the employment case sooner resulted in Labor Code claims being time-barred. Jamison filed a motion for judgment on the pleadings in the malpractice case on the ground that he did not commit malpractice in the employment case because the Labor Code claims were either time-barred before he was retained or, alternatively, were not time-barred when he filed the complaint in that case. The latter of these alternate arguments directly contradicts the superior court's order sustaining the employer's demurrer to the Labor Code claims in the employment case.

In the malpractice case, the superior court granted Jamison's motion for judgment on the pleadings based on its conclusion that Jamison could not be held liable for legal malpractice because he had timely filed the complaint in the employment case. Thus, the superior court judge in the malpractice case disagreed with the superior court judge in the employment case. Church appeals the judgment in favor of Jamison in the malpractice case. The employment case is still pending, on the remaining claims of breach of contract and misrepresentation. The defendants in that case, Keith Wilcox and Wilcox, Hokokian & Jackson, have appeared here as amici curiae.

The judgment is reversed. We publish that portion of this opinion that addresses vested vacation because our analysis conflicts with the analysis adopted in *Sequeira v. Rincon-Vitova Insectaries, Inc.* (1995) 32 Cal.App.4th 632 [38 Cal.Rptr.2d 264] (*Sequeira*) and the position taken by California's Division of Labor Standards Enforcement (DLSE) regarding a "look-back" application of the statute of limitations.

## SUMMARY OF ISSUES AND CONCLUSIONS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## FACTS AND PROCEEDINGS

The facts stated here were taken from the pleadings in the malpractice case and documents subject to judicial notice, such as the pleadings and other documents filed in the employment case.

---

[1] Further references to Jamison in the singular include both respondents.
*See footnote, *ante*, page 1568.

Church discussed the prospects of working for Wilcox, Hokokian & Jackson (WHJ), an accountancy corporation that maintains its principal place of business in Fresno County. Church alleges that Keith Wilcox and Rick Jackson represented to him that, if he moved from South Carolina to Fresno, he would be employed by WHJ on the following terms: (1) compensation at a rate of $8,500 per month, (2) termination only for good cause, (3) merit-based bonuses based on production, and (4) at the conclusion of one year of employment he would unconditionally become a shareholder in the corporation and share in its profits. In addition, Church and the corporation agreed that his compensation for the first year of employment would be deferred and considered his buy-in into WHJ, which would be considered paid at the end of his first year of employment. If Church did not want to purchase an ownership interest at the end of his first year, he would then be paid an amount equal to his salary for the first year.

Based on these and other terms, Church was employed by WHJ from May 1, 1998, through May 1, 2001, to provide auditing and health care consultancy services. In May 1999, Church and WHJ failed to reach an agreement for his purchase of an ownership interest in the corporation. Instead, they made a second oral agreement. This second agreement provided that (1) the deferred compensation from the first year would be treated as Church's purchase of an ownership interest in WHJ in May 2000, (2) the parties would agree to the final terms of Church's buy-in by the end of May 2000 with the deferred compensation being applied to the purchase price, (3) Church would immediately be paid the deferred compensation if no agreement was then reached on his purchase of an ownership interest in WHJ, and (4) Church's salary for his second year would be paid on a monthly basis.

In May 2000, the parties again failed to reach an agreement on the terms of Church's purchase of an ownership interest and they agreed the deferred compensation would be paid in June 2000. Church demanded payment in June, but WHJ did not pay him. Church alleges that WHJ has still not paid him for his first year of work.

On August 13, 2001, Church retained Jamison to act as his lawyer and represent his interests in his dispute with WHJ. On April 30, 2002, Jamison filed a complaint for Church and against WHJ in the Fresno Superior Court. Slightly more than two months later, Jamison executed a substitution of attorney form which ended his representation of Church in the employment case against WHJ.

On July 3, 2002, new attorneys representing Church filed a first amended complaint in the employment case. They filed a second amended complaint two months later, and the superior court sustained a demurrer to the second

amended complaint with leave to amend. The attorneys filed a third amended complaint against WHJ—for breach of contract, intentional misrepresentation, negligent misrepresentation, Labor Code violations, and unjust enrichment—in December 2002. WHJ filed another demurrer and the hearing was set for April 4, 2003.

The tentative ruling stated that the general demurrer to the Labor Code claims on the grounds they were untimely would be overruled because Church's allegations were sufficient to raise the possibility that WHJ was estopped from raising the statute of limitations as a defense. In addition, the tentative ruling stated that the general demurrer to the count containing the Labor Code violations would be sustained with leave to amend so that Church could allege whether he resigned or was discharged. (See Lab. Code, §§ 201 [discharged employee shall be paid final wages within 72 hours], 202 [when final wages are due to employee who resigns].)

After hearing argument, however, the superior court changed its tentative ruling and on April 30, 2003, sustained the general demurrer to the claims included in the fourth and fifth counts of the third amended complaint "without leave to amend on the basis that the cause of action is barred by the applicable statute of limitations."

On April 27, 2004, less than one year after the general demurrer to Church's claims under the Labor Code in the employment case was sustained, Church filed a complaint for legal malpractice against Jamison. The malpractice complaint alleged that, had Jamison exercised proper care and skill in the lawsuit against WHJ, Church "would have been able to recover from Wilcox for violations of the Labor Code including, but not necessarily limited to, reimbursement for business expenses required by Labor Code § 2802, failure and refusal to pay [Church] when his wages became due and payable under Labor Code § 202, interest on all due and unpayable [sic] wages under Labor Code § 218.6, waiting time penalties under Labor Code § 203 and attorney fees pursuant to Labor Code § 218.5."

Jamison responded to the malpractice complaint by filing a demurrer on the ground that the action against him was not brought within the one-year period of limitations contained in Code of Civil Procedure section 340.6. Specifically, Jamison argued that Church should have discovered Jamison's malpractice, allegedly based on the failure to timely file the Labor Code claims, when WHJ filed any one of its three demurrers that raised the statute of limitations defense. Jamison also argued that Church suffered actual injury, for purposes of Church's legal malpractice claim, as soon as Church incurred attorney fees contesting the demurrers of WHJ that raised the statute of limitations defense in the employment case.

In October 2004, the superior court overruled the demurrer filed by Jamison to the malpractice complaint and stated, "It is simply too early to decide that [Church]'s claims are time-barred." The superior court was unwilling to draw factual inferences about what Church knew or should have known and when he actually incurred attorney fees.

Jamison answered Church's first amended complaint for malpractice and breach of contract. On December 29, 2004, Jamison filed a motion for judgment on the pleadings in which he asserted that he could not have committed malpractice because the statute of limitations applicable to Church's Labor Code claims had either expired before his representation started or, alternatively, had not yet expired before he filed the complaint against WHJ. Expressly disagreeing with the rulings made in WHJ's favor on WHJ's demurrer in the employment case, the superior court in the malpractice case granted Jamison's motion for judgment on the pleadings.

Church appealed in the malpractice case, which appeal we currently consider. Trial of the remaining claims by Church against WHJ, in the employment case, remains pending.

## DISCUSSION

I.–VI.*

VII. *Payment for Vested Vacation*

### A. *Facts and Contentions*

Church's malpractice claim relating to his Labor Code cause of action for unused vested vacation time is less factually complicated than the other Labor Code claims. In short, Church asserts that he earned vacation during his first year of employment with WHJ, he did not use that vacation time, and WHJ did not pay him for his unused vacation time after he stopped working.

Specifically, Church's third amended complaint in the employment case alleged that, "as of May 1, 2000, [Church] had accrued 10 days of paid time off pursuant to [WHJ's] employment policies at the rate of $49.04 per [hour] which he had not taken. As a result, [Church] is now due and owing vacation pay in the amount of $3,923.20." Church's initial complaint in the employment case alleged his employment with WHJ continued until May 1, 2001.

---

*See footnote, *ante*, page 1568.

Church's claim for unused vested vacation was eliminated from the employment case by the April 30, 2003, order of the superior court that sustained WHJ's demurrer to his Labor Code causes of action on statute of limitations grounds. In the legal malpractice action, Church alleges that Jamison's negligence resulted in the loss of his claim for vested vacation.

Jamison contends that he filed Church's claim for vested vacation in a timely manner and, therefore, the superior court's erroneous ruling was the sole cause of Church's loss of that claim. As a result, Jamison concludes, Church cannot state a cause of action for legal malpractice regarding Church's claim for vacation pay.

### B. *Legal Issues*

An employee's right to be paid for vacation time that has not been used when the employment ends is addressed by Labor Code section 227.3, which provides in full: "Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, *all vested vacation shall be paid* to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination. The Labor Commissioner or a designated representative, in the resolution of any dispute with regard to vested vacation time, shall apply the principles of equity and fairness." (Italics added.)

The text of Labor Code section 227.3 provides the basis for answering the legal question crucial to Church's malpractice claim—when did his statutory claim to be paid for unused vested vacation time accrue for statute of limitations purposes.

### 1. *Accrual date of claim under Labor Code section 227.3*

██ Under Labor Code section 227.3, an employee has the right to be paid for unused vacation only after the "employee is terminated without having taken off his vested vacation time." Thus, termination of employment is the event that converts the employer's obligation to allow an employee to take vacation from work[17] into the monetary obligation to pay that employee for unused vested vacation time. Consequently, Church's cause of action to

---

[17] This obligation is limited by the employer's right to impose reasonable restrictions and scheduling requirements that affect when an employee may take vacation time. (See *Henry v. Amrol, Inc.* (1990) 222 Cal.App.3d Supp. 1, 5 [272 Cal.Rptr. 134].)

enforce his statutory right to be paid for vested vacation did not accrue until the date his employment was terminated. Had Church filed a cause of action seeking payment for unused vested vacation before his employment with WHJ ended, that cause of action would have been dismissed as premature. (Code Civ. Proc., § 312 [civil actions can only be commenced within the applicable period "after the cause of action shall have accrued"].)

Church alleged that his employment with WHJ continued until May 1, 2001. Therefore, we conclude that his cause of action seeking payment for unused vested vacation did not accrue and could not have been filed in court any earlier than May 1, 2001.

### 2. *Applicable statute of limitations*

■ There are three statutes of limitations that might apply to a claim by a former employee seeking payment for unused vested vacation because the claim could be characterized as one based on (1) an oral employment contract, (2) a written employment contract, or (3) a liability created by statute. A two-year limitations period applies to oral contract claims. (Code Civ. Proc., § 339, subd. 1.) A four-year limitations period applies to claims based on written contracts. (*Id.*, § 337, subd. 1.) A three-year limitations period applies to an "action upon a liability created by statute." (*Id.*, § 338, subd. (a).)

In the employment case, Jamison filed the complaint against WHJ on April 30, 2002, which is less than one year after Church's employment was terminated on May 1, 2001. Consequently, the complaint was filed within all of the potentially applicable limitation periods and we need not decide which period applies.

### C. *Look-back Limitation on Right to Payment for Vested Vacation*

### 1. *Background on the DLSE's interpretation*

Amici curiae urge us to conclude that Church's right under Labor Code section 227.3 to be paid for "all vested vacation . . . at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served" is limited by a second application of the statute of limitations—one which applies the limitations period in reverse to limit the years for which vested vacation must be paid upon termination. Church disagrees, as do we.[18]

---

[18] Amici curiae also argue that it is the two-year statute that applies. Therefore, we must decide the look-back issue here, in the malpractice case, because if amici curiae were correct that a two-year look-back limitation applies, then (1) Church could not recover for vacation

In *Sequeira, supra,* 32 Cal.App.4th 632, a terminated employee filed an application with the California Labor Commissioner seeking payment for all unused vacation time that had accumulated over the 12 years he had worked for his former employer. (*Id.* at p. 634.) The Labor Commissioner limited the award to the employee to payment for unused vacation earned but not taken within the four years prior to his termination. This limit was based on the position that a claim for vacation time earned prior to that period was barred by the four-year statute of limitations applicable to written contracts. (*Ibid.*) The trial court and the appellate court agreed that the employee was barred from recovering for unused vacation that had vested more than four years before his termination.

The appellate court's rationale for limiting the employee's recovery to the last four years of his 12 years of employment was based on deference to the position taken by the DLSE in Interpretive Bulletin No. 87-7. (*Sequeira, supra,* 32 Cal.App.4th at pp. 635–637.) In that bulletin, the DLSE concluded that the statute of limitations begins to run as the vacation is earned or at the point when the employee is eligible to take the vacation because the employee can take an affirmative step to enforce his or her right to the vacation by simply using it. (*Id.* at p. 635.) The *Sequeira* court stated the DLSE's interpretation of the Labor Code and its conclusions regarding the application of the statute of limitations were entitled to great weight and would be disregarded only if clearly unreasonable. (*Sequeira,* at p. 635.)

After the decision in *Sequeira,* however, the California Supreme Court decided *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557 [59 Cal.Rptr.2d 186, 927 P.2d 296] (*Tidewater*) and *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575 [94 Cal.Rptr.2d 3, 995 P.2d 139] (*Morillion*), which address the weight that courts should give certain interpretations by the DLSE.

In *Tidewater,* the court concluded that the DLSE interpretative policies contained in its manual were regulations and, as such, were void because they were not promulgated in accordance with the Administrative Procedure Act (Gov. Code, § 11340 et seq.). (*Tidewater, supra,* 14 Cal.4th at p. 572.) In *Morillion,* the court noted that it had repeatedly rejected the argument that courts should give deference to long-standing interpretative policies of the DLSE. (*Morillion, supra,* 22 Cal.4th at p. 581.)

---

earned in his first year of employment, from May 1, 1998, through April 30, 1999; and (2) Jamison could not be liable for malpractice based on his failure to file the complaint in the employment case in a timely fashion because the claim for unused vacation would have been barred by the time the termination from employment occurred.

In accordance with *Tidewater* and *Morillion*, we will give no weight to the interpretations that may be implied from section 15.1.9 of the Enforcement Policies and Interpretations Manual of the DLSE,[19] which states: "**Statute of Limitations**. The statute of limitations for recovery of vacation pay claims is two years from the time of termination on an oral contract and four years on a written contract. The California courts in *Sequeira*[, *supra*,] 32 Cal.App.4th 632 . . . adopted the long-standing view of the DLSE in this regard. (See O.L. 1991.02.25, written before the *Sequeira* case was decided.)"

Specifically, to the extent that section 15.1.9 of the Enforcement Policies and Interpretations Manual implies that the DLSE still takes the position that a two- or four-year period should be used to measure backward from the employee's termination date to determine how much unused vacation must be paid, we give no weight to that position. Further, because the portion of the opinion in *Sequeira* that gave great weight to the DLSE Interpretive Bulletin No. 87-7 is inconsistent with the principles set forth in *Tidewater* and *Morillion*, the *Sequeira* court's conclusion that the statute of limitations applies in reverse to limit an employee's recovery for unused vacation time no longer stands on firm ground.

In addition, the context and circumstances that produced the DLSE's creation of a look-back period detract from its convincing effect. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 8 [78 Cal.Rptr.2d 1, 960 P.2d 1031] [recognizing the situational nature of an agency's legal opinion regarding the interpretation of a statute and that the interpretation "may sometimes be of little worth"].) First, the DLSE's expertise does not extend to provisions in the Code of Civil Procedure that control the application of statutes of limitations.[20] Second, the DLSE's

---

[19] By letter dated July 21, 2006, this court advised the parties and amici curiae that it would, on its own motion, take judicial notice of sections 1 and 15.1.9 of the DLSE's manual as well as opinion letter 1991.02.25. The manual is available at <http://www.dir.ca.gov/dlse/DLSEManual/dlse_enfcmanual.pdf> (as of Oct. 23, 2006) and the opinion letter is available at <http://www.dir.ca.gov/dlse/opinions/1991-02-25.pdf> (as of Oct. 23, 2006).

[20] The present version of section 31.7.2.1 of the DLSE manual provides another example of the DLSE producing a questionable legal interpretation outside its area of expertise. That section cites Civil Code section 1526 and states that a "payment in full" check does not constitute an accord and satisfaction if the employee strikes out the restrictive notation on the check. Reliance on that code section has been suspect since the court in *Directors Guild of America v. Harmony Pictures* (C.D.Cal. 1998) 32 F.2d 1184 ruled that Commercial Code section 3311 impliedly repealed Civil Code section 1526 because the two were irreconcilable and Commercial Code section 3311 was enacted later. (Accord, *Woolridge v. J.F.L. Electric, Inc.* (2002) 96 Cal.App.4th Supp. 52, 59 [117 Cal.Rptr.2d 771]; see Maurer & Dahle, *New Law on "Payment-in-Full" Checks* (May 1999) Cal. Lawyer, at p. 28.)

analysis never mentioned the requirement in Code of Civil Procedure section 312 that a claim cannot be commenced before it accrues and starts the limitations period running. In short, the DLSE was not operating in its area of expertise and did not consider all of the relevant rules of law.

Accordingly, we will decide the issue anew based on (1) the language of Labor Code section 227.3 and (2) the fundamental principles of law that govern the application of statutes of limitations.

### 2. Construing Labor Code section 227.3

■ Labor Code section 227.3 states that "all vested vacation shall be paid to [a terminated employee] as wages . . . ." The use of the words "shall" and "all" in this phrase is not ambiguous. "Shall" is mandatory. (Lab. Code, § 15.) "All" is a word of inclusion, not exclusion. In *Dalton v. Baldwin* (1944) 64 Cal.App.2d 259, 263 [148 P.2d 665], the court addressed a statute's use of the word "all" as follows: "To us the word 'all' means not only 'any' right, or 'every' right, but the entire inclusiveness of the word excludes no right whatever." (Accord, *Daniels v. McMahon* (1992) 4 Cal.App.4th 48, 62, fn. 10 [5 Cal.Rptr.2d 404]; *La Mar v. City Council of So. S. F.* (1942) 53 Cal.App.2d 387, 390 [127 P.2d 1022] [ordinance used "all" to mean "the whole of" or "the greatest quantity"].)

Based on the plain and ordinary meaning of the statutory language, Labor Code section 227.3 cannot be interpreted to exclude unused vacation that vested more than two or four years before the employee was terminated from the unused vacation time for which a terminated employee must be paid. (*Pratt v. Vencor, Inc.* (2003) 105 Cal.App.4th 905, 909 [129 Cal.Rptr.2d 741] [plain meaning of unambiguous statute governs].) Neither is that plain and ordinary meaning overcome by the Supreme Court's opinion in *Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774, 778–784 [183 Cal.Rptr. 846, 647 P.2d 122], which was cited in *Sequeira. (Sequeira, supra,* 32 Cal.App.4th at p. 636.) *Suastez* addressed the subject of vesting, a subject entirely different from that which we address here. Finally, we reject the notion that administrative inconvenience can be a basis for ignoring the plain and ordinary meaning of Labor Code section 227.3. (*Sequeira, supra,* at p. 635 ["The DLSE explained that unless the statute of limitations were applied, '[w]e would be required to review the entire employment history of the person . . . to determine if any vacation was owed' "].)[21]

---

[21] This does not mean, however, that the equitable doctrine of laches could not apply to limit an employee's right to recover for vested but unused vacation. (*Sequeira, supra,* 32 Cal.App.4th at p. 637.) While statutes of limitations and the doctrine of laches do coincide in their "recognition that claims can become stale—documents may be lost and memories fade over

Because Labor Code section 227.3 cannot itself be the source of a look-back period that limits the right to recover for unused vested vacation, we next consider whether such a look-back period can be derived from the principles of law governing the application of statutes of limitations.

### 3. *Dual application of statute of limitations*

The DLSE's Interpretive Bulletin No. 87-7 states that " 'the obligation to use vacation arises as it is earned (so the statute [of limitations] is running) . . . .' " (*Sequeira, supra,* 32 Cal.App.4th at p. 635.) Based on this position, the DLSE applied "the statute of limitations twice: once at the outset of the review of the claim to limit the time within which the claim may be brought after termination, and again to limit the time—measured from the date of termination backward—the liability of the employer exists. Both applications of the statute of limitations are to be based on whether the vacation contract (or policy) involved was written or oral. (e.g., two years or fours [*sic*] years.)" (DLSE opn. letter 1991.02.25, p. 2.)[22]

This unusual dual application of a statute of limitations is troubling for a number of reasons. First, aside from *Sequeira*, the parties have not cited and we have not located any other cases in which a court has adopted this unusual dual application of a statute of limitations. The approach was without precedent when the DLSE adopted it.

Second, it is based on the idea that an employee has the *obligation* to use vacation.[23] The source of this obligation is not identified. The obligation does not exist at common law, and it is not expressly created by the Labor Code.

---

time" (*ibid.*), it remains the case that statutes of limitations and the doctrine of laches are distinct concepts that apply in distinct ways. (See *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 179 [96 Cal.Rptr.2d 518, 999 P.2d 706] [laches is an equitable defense].)

Labor Code section 227.3 provides for the application of principles of equity, such as laches, but equitable principles must be applied on a case-by-case basis. Our analysis does not conflict with the result reached in *Sequeira* to the extent that it was based on an alternative rationale involving the equitable doctrine of laches. (*Sequeira, supra,* 32 Cal.App.4th at p. 637.)

[22] The practical effect of the DLSE's approach is to create a "use it or lose it" rule that employers arguably could not have included in their vacation policies without running afoul of the statutory restriction that an "employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination." (Lab. Code, § 227.3; see *Boothby v. Atlas Mechanical, Inc.* (1992) 6 Cal.App.4th 1595 [8 Cal.Rptr.2d 600] ["use it or lose it" vacation policy impermissible].)

[23] This characterization of the relationship between the employee and employer with respect to vacation time earned appears to have turned the relationship on its head by transmuting the employee's *right* to take vacation time into an *obligation* to use vacation time. (See generally Hohfeld, Fundamental Legal Conceptions (Cook ed. 1919) pp. 36–38 [identifying rights as the jural correlative of obligations, i.e., duties].)

Neither have the parties identified any statutory language from which it may be implied. Finally, the source of the purported obligation to use vacation time cannot be contractual. If it were contractual, presumably the terms of the contract, which could vary from one employer-employee relationship to another, would control the specific details of the obligation. For example, an employer might choose to offer employment contracts or institute a policy that gives its employees the right to defer taking vacation for as long as they like.[24] This flexibility in contracting and employment policies leads to the conclusion that the purported obligation to use vacation time is not included in *all* employment contracts as either a matter of law or of fact. In sum, we are unconvinced that all California employees who earn vacation time are subject to an obligation to take vacation. (See *Bonn v. California State University, Chico* (1979) 88 Cal.App.3d 985 [152 Cal.Rptr. 267] [public employer may not direct employee to expend accumulated vacation].)

 Third, the DLSE's dual application of the statute of limitations is based on the erroneous premise that the statute of limitations begins to run when the employee earns the vacation benefit. California's well-established principles governing when a statute of limitations commences preclude this court from agreeing with the DLSE's position. One fundamental principle is that a statute of limitations begins to run only when the cause of action has accrued and not before. (Code Civ. Proc., § 312.) A second fundamental principle is that generally "the accrual of a cause of action sets the date as the time 'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises.' [Citation.]" (*Norgart v. Upjohn* (1999) 21 Cal.4th 383, 397 [87 Cal.Rptr.2d 453, 981 P.2d 79].) This date also can be described as "when the cause of action is complete with all of its elements [citations] . . . ." (*Ibid.*; see *Davies v. Krasna* (1975) 14 Cal.3d 502, 513 [121 Cal.Rptr. 705, 535 P.2d 1161] [the limitations "period cannot run before plaintiff possesses a true cause of action"].) Yet an employee's earning a vested vacation benefit is not the event that completes a cause of action in all of its elements—it is not the wrongful act from which liability arises.

 Because the DLSE's look-back period is based on the statute of limitations applicable to contracts, we will use a contractual theory of liability to analyze the DLSE's premise that the statute of limitations begins to run when vacation is earned. Under a contractual theory of liability, the "wrong" that is an essential element of the claim is the defendant's breach. (*Armstrong*

---

[24] Nothing in the text of Labor Code section 227.3 suggests the Legislature intended to restrict the freedom of employers and employees to contract for a right to defer or accumulate vacation time or the freedom of employers to choose to adopt a vacation policy granting such a right. Nor would a contract provision creating a right to defer taking vacation time appear unenforceable on public policy grounds.

*Petroleum Corp. v. Tri-Valley Oil & Gas Co.* (2004) 116 Cal.App.4th 1375, 1391, fn. 6 [11 Cal.Rptr.3d 412]; *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1388 [272 Cal.Rptr. 387].) As a result, a breach of contract claim does not accrue until there has been a breach of the contract. In the context of an employee earning vacation, that event—the earning of vacation—does not create a breach of contract by the employer or the employee. Therefore, no claim accrues and no statute begins to run at the time vacation is earned. In other words, if an employee filed a civil action for breach of contract on the day vacation was earned, Code of Civil Procedure section 312 would require that the action be dismissed as premature.[25]

In summary, (1) a cause of action for breach of contract accrues for statute of limitations purposes only after there has been a breach of the contract, (2) the point at which vacation time is earned cannot be equated to a breach of contract and, therefore, (3) the statute of limitations applicable to contracts does not begin to run when vacation time is earned. Accordingly, we conclude that the statute of limitations cannot be applied as a look-back period to limit an employer's statutory obligation to pay for all vested vacation time that an employee did not take before the employment was terminated.

### D. *Application to Facts of this Case*

 Jamison did not commit legal malpractice with respect to Church's claim for payment for 10 days of vacation that had been earned as of May 1, 2000, because (1) the complaint was filed within one year of the termination of Church's employment and (2) the two-year limitations period applicable to oral contracts cannot be used as a look-back period that limits an employer's statutory liability to pay for all vested vacation that has not been used at the employee's termination date.

Accordingly, the superior court in the malpractice case correctly ruled that Jamison did not commit legal malpractice with respect to Church's claim under Labor Code section 227.3 for unpaid vacation.

## VIII. *Collateral Review*

Church argues that the superior court erred in ruling on Jamison's motion for judgment on the pleadings in the malpractice case by not deferring to the

---

[25] The same conclusion would be reached under a statutory, rather than a contractual, theory of liability. Under the statutory theory, the wrong that triggers the running of the statute of limitations is the violation of the statute. Here, earning vested vacation does not violate Labor Code section 227.3.

conclusions contained in the order sustaining the general demurrer to Church's Labor Code claims against WHJ in the employment case.

### A. *Collateral Attack of a Prior Judgment**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### B. *Judicial Finality*

Church also argues that, even if Jamison's motion for judgment on the pleadings was not, strictly speaking, a collateral attack, it was an inappropriate request for judicial review and rejection of another superior court's decision. To support this argument, Church cites the concurring opinion in *Lombardo v. Huysentruyt* (2001) 91 Cal.App.4th 656 [110 Cal.Rptr.2d 691], which makes reference to "the concept of judicial finality." (*Id.* at p. 676 (conc. opn. of Haerle, J.).)

In *Lombardo v. Huysentruyt, supra,* 91 Cal.App.4th 656, the individuals named as beneficiaries in an attempted amendment to a trust brought a legal malpractice case against the lawyer who drafted the trust amendment and failed to get it put into effect. The trial court granted nonsuit to the lawyer and stated that the probate court had erred in ruling the amendment invalid and that the probate court's erroneous ruling superseded the lawyer's alleged negligence as the cause of the damage to the beneficiaries. The Court of Appeal reversed the grant of nonsuit and remanded for further proceedings. (*Id.* at p. 675.) The Court of Appeal reasoned that the question of causation presented an issue of fact and it was possible that the lawyer's negligence caused the injury because a reasonable attorney in the same circumstances would have anticipated the probate court's ruling that the amendment was invalid and taken steps to avoid putting the probate court in a position to make such a ruling. (*Id.* at p. 666; see 2 Schwing, Cal. Affirmative Defenses (2006 ed.) § 48:27 [an intervening act is a superseding cause if the intervening act produces a kind or degree of harm so far beyond the risk the original tortfeasor could have foreseen that the law deems it unfair to hold the original tortfeasor responsible].)

█ The holding and rationale in *Lombardo v. Huysentruyt, supra,* 91 Cal.App.4th 656 do not support the conclusion that an attorney sued for malpractice is precluded from arguing that a trial court's decision in the lawsuit that is the basis for the malpractice case was erroneous. In addition, the parties have not cited and we are not aware of any published decision by a California appellate court that has reached that conclusion. Finally, Church

---

*See footnote, *ante,* page 1568.

has not presented public policy arguments that have convinced us that we should be the first court to adopt such a rule. For example, Church has not explained how a rule that requires the trial court in a legal malpractice case to accept the ruling made by the court in the litigation that gave rise to the malpractice case would be consistent with the "case-within-a-case" approach used in California legal malpractice cases. (See *Salisbury v. County of Orange* (2005) 131 Cal.App.4th 756, 764 [31 Cal.Rptr.3d 831].) The case-within-a-case or trial-within-a-trial approach applied in legal malpractice cases uses an objective approach to decide what *should have been the result* in the underlying proceeding or matter. (*Hecht, Solberg, Robinson, Goldberg & Bagley LLP v. Superior Court* (2006) 137 Cal.App.4th 579, 585–586 [40 Cal.Rptr.3d 446].) It follows that, where the underlying proceeding was decided by a trial court's ruling, that ruling will come under scrutiny in the malpractice case when the issue of what should have been the result of the underlying proceeding is addressed.

Accordingly, we will not adopt a rule of law that limits the arguments that an attorney may raise when defending against a legal malpractice claim and forces the attorney to abide by the decision reached in the underlying action.

We recognize that the way Code of Civil Procedure section 340.6, subdivision (a) is written and interpreted will require plaintiffs, in certain circumstances, to file legal malpractice cases involving missed statutes of limitations before the underlying lawsuit has reached a final judgment or other final resolution. Sometimes, those situations will produce contradictory rulings between the superior courts involved in the underlying lawsuit and the legal malpractice lawsuit. Furthermore, the lack of finality in the underlying lawsuit adds a layer of uncertainty to the legal malpractice lawsuit that makes the legal malpractice lawsuit more complex and requires more resources from the parties and the court system. Using this case as an example, under a rule that a cause of action for legal malpractice relating to a time-barred claim does not accrue until the underlying lawsuit reaches a final judgment or other final resolution, this legal malpractice case would not have been filed and, depending on how the underlying employment case was resolved, might not ever have been filed. Nevertheless, this court is not in a position to eliminate the waste and uncertainty inherent in California's current rules by redrafting the provisions of Code of Civil Procedure section 340.6, subdivision (a).[27] That task must be left to the Legislature.

---

[27] In contrast, on remand, the superior court may be able to avoid some inefficiency and uncertainty by staying the malpractice case until the employment case reaches a final resolution.

## DISPOSITION

The judgment filed April 27, 2005, is reversed. The matter is remanded to the superior court with directions to vacate its order granting the motion for judgment on the pleadings without leave to amend and to enter a new order denying that motion, except as it pertains to Church's claim for vacation pay. Church is awarded his costs on appeal.

Harris, Acting P. J., and Cornell, J., concurred.

A petition for a rehearing was denied November 9, 2006, and respondents' petition for review by the Supreme Court was denied January 17, 2007, S148570. Moreno, J., did not participate therein.