Filed 9/15/14  Tran v. Tran CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CINDY TRAN, | |
| Plaintiff and Respondent, | E055733 |
| v. | (Super.Ct.No. CIVRS912563) |
| HUYEN THI TRAN, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Ben T. Kayashima, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Huyen Thi Tran, Defendant and Appellant in pro. per.

Telep Law, Desiree Telep, and Tina Dao for Plaintiff and Respondent.

Plaintiff Cindy Tran and defendant Huyen Tran are adult sisters. According to Cindy, she bought a house in Pomona and rented it to Huyen. Later, she refinanced the Pomona house, borrowing approximately $178,000 more, and lent this amount to Huyen, who used it to buy a building in Ontario. Huyen then stopped paying rent; Huyen also refused to repay the loan.

Huyen testified to a very different version of the same events. According to Huyen, she was the true owner of the house in Pomona; she bought it in Cindy's name, because she was unable to get credit in her own name, but she made the down payment and the mortgage payments. Because the house belonged to her, the $178,000 proceeds of the refinancing belonged to her, too.

The trial court expressly found Cindy credible and Huyen not credible. Thus, it found that the $178,000 was a loan and that Huyen had breached the oral loan agreement. Accordingly, it entered judgment awarding Cindy the $178,000 against Huyen.

Huyen appeals. Basically, she argues that there was insufficient evidence to support the judgment. We will hold, however, that Cindy's testimony, which was partially corroborated by the testimony of a third sister, was sufficient to support the judgment. Even assuming it was contradictory, the question of credibility was exclusively up to the trial court to resolve. Accordingly, we will affirm the judgment.

I

FACTUAL BACKGROUND

A.      *Cindy Buys the Pomona House and Rents it to Huyen.*

In 2004, Huyen and her husband told Cindy about a house in Pomona that was for sale.  At Huyen's suggestion, Cindy purchased the Pomona house as an investment and rented it to Huyen.  The title was in Cindy's name.  Huyen paid the rent directly to the mortgage lender.  Huyen also paid the insurance.  Huyen paid the property taxes, but Cindy reimbursed her.

The agreement was entirely oral.  Cindy explained, "She is my sister.  It is family."

The house was "in move-in condition."  Huyen, however, wanted to make improvements to the kitchen and bathroom.  Cindy agreed that Huyen could remodel the house at her own expense.

B.      *Cindy Refinances the Pomona House and Lends the Proceeds to Huyen.*

In 2005, at Huyen's request, Cindy agreed to lend her approximately $178,000.  The loan was principal only, no interest.  There was no discussion of when Huyen would repay the loan.  Again, the agreement was entirely oral.  Cindy explained, "Because it's family.  It is my sister. . . .  she needed money, so I lent it to her."

Cindy came up with the money by refinancing the Pomona house, increasing the loan. So far, Huyen had not told Cindy what she wanted the money for.  Actually, she wanted it so she could buy a building in Ontario.  When Cindy asked how she should

disburse the $178,000 from the escrow on the refinance of the Pomona house, Huyen had her send it directly into the escrow on the Ontario building. Later, Huyen told Cindy that she would be able to repay the loan whenever she sold the Ontario building.

A third sister, Kacie Yan Tran Vo, partially corroborated Cindy's account. She testified that in 2005, Huyen told her that Cindy had lent her "a big, huge amount" of money "to help her purchase something really huge."

C.    *Huyen Stops Paying Rent and Refuses to Repay the Loan.*

In either February 2009 (according to Cindy) or May 2009 (according to Huyen), Huyen stopped paying rent on the Pomona house. She told Cindy that she could not make rent payments because she had no income.

Thus, in or around June 2009, Cindy "kicked [Huyen] out" of the Pomona house. Cindy told Huyen she could "walk away from the house," and Cindy would be responsible for "the past and future payments . . . ."

Cindy found that the house had been "gutted;" all of the fixtures, such as the stove, sinks, and showers, had been removed.

Around October 2009, Cindy learned that Huyen had listed the Ontario building for sale. She therefore asked Huyen when she was going to repay the loan. Huyen responded that she was "not going to pay at all."

Meanwhile, Cindy was unable to rent out the Pomona house, so she was forced to default on the mortgage and to do a short sale. This impaired her credit; thus, it prevented her from refinancing her own home to get a lower rate and from buying a car.

4

By the time of trial, Huyen had given the Ontario building to her husband's son.

D.    *Huyen's Version.*

According to Huyen and her husband, they were the true owners of the Pomona house. They entered into a written agreement with the seller. They paid a $1,000 deposit. They also paid the down payment of approximately $52,500, plus closing costs. However, they could not get a mortgage loan because they were going through a bankruptcy. Cindy therefore agreed to "carry the loan." Cindy did not invest any money into the Pomona house.

Huyen did not agree that the Pomona house was in move-in condition; according to her, it was a "fixer-upper." She claimed that she paid more than $100,000 to restore it. However, she did not introduce any documentary proof of this.

In 2005, when Huyen became interested in buying the Ontario building, she still could not get a loan. At the suggestion of her real estate agent, she got the money by refinancing the Pomona house. In her view, the $178,000 was not a loan; it was her own money — her equity in the Pomona house.

When Cindy kicked Huyen out of the Pomona house, Huyen was still in the process of remodeling it; that was why there were no fixtures.

While Huyen claimed that her monthly payments on the Pomona house were mortgage payments and not rent, she was impeached somewhat by her email telling Cindy that she was "unable to pay the *rent* at this time . . . ." (Italics added.)

5

II

PROCEDURAL BACKGROUND

Cindy filed this action against Huyen.[1]  The complaint and the answer are not in the appellate record.

After a bench trial, the trial court entered judgment awarding Cindy $178,244.66 against Huyen.  It specifically found that Cindy and the third sister were credible, but Huyen and her husband were not.

III

THERE IS SUFFICIENT EVIDENCE TO SUPPORT THE JUDGMENT

Huyen contends that there is insufficient evidence to support the judgment.

"'Where findings of fact are challenged on a civil appeal, we are bound by the "elementary, but often overlooked principle of law, that . . . the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the findings below.  [Citation.]  We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor . . . .' [Citation.]" (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1053.)  "[W]e do

---

[1]  Originally, Cindy also named as a defendant one Magdy Mohammed Mohammed Sorour Mohamme, but later, she voluntarily dismissed him without prejudice.

not second-guess the calls the trial court made regarding credibility.  [Citation.]"  (*Barboni v. Tuomi* (2012) 210 Cal.App.4th 340, 349.)

Preliminarily, Huyen has forfeited any substantial evidence review whatsoever by failing to discuss Cindy's evidence.  "An appealed judgment is presumed correct, and the appellant must affirmatively demonstrate error.  [Citation.]  An appellant challenging the sufficiency of the evidence to support the judgment must cite the evidence in the record supporting the judgment and explain why such evidence is insufficient as a matter of law.  [Citations.]  An appellant who fails to cite and discuss the evidence supporting the judgment cannot demonstrate that such evidence is insufficient.  The fact that there *was* substantial evidence in the record to support a *contrary* finding does not compel the conclusion that there *was no* substantial evidence to support the *judgment*.  An appellant . . . who cites and discusses only evidence in her favor fails to demonstrate any error and waives the contention that the evidence is insufficient to support the judgment.  [Citations.]"  (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408, italics added.)

Separately and alternatively, the evidence, in fact, was ample to support the judgment.  Huyen argues that there was insufficient evidence of an oral loan agreement, but Cindy clearly testified that there was an oral loan agreement.  Huyen argues that there was "[n]o handshake and [n]o witnesses . . . ."  A contract, however, does not require a handshake or any other particular formalities.  Moreover, no third-party witnesses were necessary.  "The testimony of a single witness, even if that witness is a party to the case,

7

may constitute substantial evidence. [Citation.]" (*Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 201.)

In any event, Kacie corroborated Cindy, testifying that Huyen admitted borrowing a large sum of money from Cindy to make a major purchase. Huyen complains that Kacie was vague and did not know the details of the transaction. That does not take away, however, from the facts that she *did* know. Huyen also complains that Kacie's testimony was "hearsay." (Bolding omitted.) This is true, but it was *admissible* hearsay — it was based on Huyen's own statements. (Evid. Code, § 1220.)

Huyen also argues that there was insufficient evidence of a breach of contract. Cindy testified, however, that she asked Huyen when she was going to repay the loan, and Huyen replied that she was "not going to pay at all." This constituted an anticipatory breach of contract. (See generally *Taylor v. Johnston* (1975) 15 Cal.3d 130, 137-138.) Moreover, Huyen had promised to pay the loan when she sold the Ontario building; nevertheless, she gave the Ontario building to a relative, making it clear that she was never going to pay.

Huyen argues that Cindy's testimony was contradictory. We perceive no material contradictions. As Huyen points out, Cindy testified that she knew that Huyen wanted to borrow $178,000; however, she did not know what Huyen wanted the money for. This is not contradictory. Cindy also admitted that eventually, she learned that Huyen wanted the money so she could buy the Ontario building. Once again, this is not contradictory. At worst, Cindy was vague about the exact purchase price and loan amount for the

Pomona house; however, this could have been an innocent memory lapse, as it involved a deal some seven years earlier. Finally, even assuming that Cindy did contradict herself, "'[c]onflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' [Citation.]" (*DiQuisto v. County of Santa Clara* (2010) 181 Cal.App.4th 236, 261.)

Finally, Huyen points to her own and her husband's testimony on various points. The trial court, however, expressly found that Cindy and Kacie were credible, whereas Huyen and her husband were not. And it had good reason for this. For example, Huyen claimed that she paid the down payment on the Pomona house, but she did not introduce any documentary proof of this. Likewise, Huyen claimed that she made over $100,000 of improvements to the Pomona home, but she did not introduce any documentary proof of this, either. Finally, Huyen was impeached by her email referring to her payments on the Pomona house as "rent."

We note that, while Cindy, as the plaintiff, had the overall burden of proof, she was entitled to a presumption that she was the owner of full beneficial title to the Pomona house. (Evid. Code, § 622.) Huyen had to rebut this presumption — if at all — by clear and convincing evidence. (*Ibid*.) Thus, even if the trial court was simply unable to decide whether to believe Cindy or Huyen, it would have been required to conclude that the equity in the Pomona house belonged to Cindy. "Significantly, when it applies, the

9

form of title presumption may not be 'rebutted by evidence that title was taken in a particular manner merely to obtain a loan.' [Citations.]" (*In re Marriage of Fossum* (2011) 192 Cal.App.4th 336, 345, fn. 5.)

Huyen makes a brief, off-hand reference to the statute of limitations. We deem her to have forfeited any related contention by failing to cite any relevant authorities or to provide any reasoned argument. (*Lewis v. City of Benicia* (2014) 224 Cal.App.4th 1519, 1539.) In any event, the statute of limitations on a cause of action for breach of contract runs from the date of the breach, not the date of the contract. (*Church v. Jamison* (2006) 143 Cal.App.4th 1568, 1583.) Huyen repudiated the loan in October 2009, and Cindy filed this action in November 2009 — well within any possible limitations period.

Similarly, Huyen makes a brief, off-hand reference to the statute of frauds. Once again, we deem her to have forfeited any related contention by failing to cite any relevant authorities or to provide any reasoned argument. In any event, in the trial court, Huyen's counsel conceded that, if the transaction was "a pure money loan" — i.e., not an investment in the Ontario building — the statute of frauds would not apply. The trial court expressly found that the transaction was an "oral loan." Hence, we need no decide whether the statute of frauds applied; even assuming the trial court erred by finding that it did not, the error was invited.

We therefore conclude that the judgment is supported by substantial evidence.

10

IV

DISPOSITION

The judgment is affirmed.  Cindy is awarded costs on appeal against Huyen.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.